Schuff *et al. v.* Ransom.

No. 8224.

## SCHUFF ET AL. *v.* RANSOM.

DEED.—*Condition Subsequent.—Forfeiture.—Demand.*—To work a forfeiture of an estate by reason of a condition subsequent, it must appear that there was a demand of performance of the condition and a failure to perform.

SAME.—*Non Compos Mentis.—Instruction.*—An instruction to the jury, " that if, at the time of executing the deed in question, the grantor had mind to know and comprehend that he was making a deed and thereby conveying the land described in it to his son, and had an object in so doing which he comprehended, then he was of sound mind," is not a correct definition of mental soundness.

SAME.—*Action to Set Aside.—Disaffirmance.—Heirs.—Complaint.*—A deed executed by a grantor of unsound mind, he not having been so adjudged at the time of making the deed, is not void but voidable only, and he has the right to avoid or ratify it on becoming sane, and his heirs have the same right; and an action by heirs to set aside such deed can not be maintained unless some act disaffirming the deed has been done before commencing the suit; and, if the complaint fail to show this, it is bad on demurrer.

ASSIGNMENT OF ERROR.—*Practice.—Supreme Court.*—The assignment of error of the insufficiency of one or more paragraphs of a complaint, less than the whole, presents no question in the Supreme Court.

From the Switzerland Circuit Court.

*J. D. Works* and *J. A. Works,* for appellants.

*W. D. Ward* and *T. Livings,* for appellee.

WORDEN, J.—This was an action by the appellants, who were heirs at law of Spaldin Ransom, deceased, against John Ransom, the appellee, to set aside a conveyance of certain real estate described, made by the deceased in his lifetime, to the defendant, John Ransom.

The complaint consisted of five paragraphs.

The first and second paragraphs are much alike. They allege the mental unsoundness of the grantor at the time of making the conveyance, and seek to have it set aside and to have partition of the land. They need not be further particularly noticed, no question being legitimately made as to their sufficiency.

The third paragraph alleged that on the 9th day of De-
cember, 1874, Spaldin Ransom was the owner of the land,
describing it, and that on that day he conveyed it to the de-
fendant by warranty deed. " That, in consideration of said
conveyance, the defendant entered into a written contract, by
which he agreed, that, in consideration of said conveyance, he
would leave to the said Spaldin Ransom, for and during his
natural life, the house in which the said Spaldin Ransom
then resided on said land, together with the garden spot and
door yard and ground around said house as now enclosed,
and that he would furnish to the said Ransom his firewood,
ready prepared for use near his door, during his natural life;
that the said John Ransom would deliver to the said Spaldin
Ransom the one third part of all crops raised on said land, ex-
cept on the garden spot reserved for the said Spaldin Ransom
and the one on the opposite side of the road around the
frame building on said land to be occupied by the defendant;
that the said Spaldin Ransom should have the dividing of
the plums that might grow on the opposite side of the road
from his dwelling; that the said Spaldin Ransom should
have what fruit he wished to use out of the orchard on said
land each and every year during the life of the said Spaldin
Ransom.

"The defendant further agreed in said contract, that he would,
in consideration of said conveyance, pay to Nancy Miller, wife
of David Miller, and daughter of the said Spaldin Ransom,
the sum of $200 one year after the death of the said Ransom;
$200 to Maria Robinson, wife of Winthrop Robinson, and
daughter of said Spaldin Ransom, two years after said Ran-
som's death; and $150 to Alice Schuff, wife of Samuel Schuff,
and daughter of said Ransom, three years after the death of
said Spaldin Ransom; and to the heirs of Lucy Dickason, the
deceased wife of James Dickason, and daughter of the said
Ransom, $200 four years after the death of the said Spaldin
Ransom.

" It was further stipulated in said contract, that the condi-

tions of the same being complied with on the part of the said defendant, and the payments made as therein provided, should be the full consideration for said tract of land.

"The plaintiffs allege that the defendant has wholly failed, refused and neglected to perform the conditions of said contract, or any of them; that he took possession of said real estate on the —— day of October, 1875, and still holds possession thereof; that the said Spaldin Ransom departed this life intestate, on the —— day of ————, 1876, leaving the plaintiffs and the defendant his heirs at law; that the defendant has received all of the rents and profits of said real estate since he took possession thereof, and has given no account thereof; that said rents and profits so received by him were of the value of $1,000. Wherefore plaintiffs say that the defendant is not the owner of said real estate, and they ask that said deed be declared of no effect, and set aside; that they have judgment for $1,000, and for all other proper relief."

The fourth paragraph alleged the conveyance of the land by Spaldin Ransom to the defendant, and the execution of the written contract as set forth in the third paragraph, and then proceeds as follows: "The plaintiffs further allege, that at the time of making said deed the said Spaldin Ransom was eighty years old, and that he was then, and had been for several years, and continued to be until the time of his death, of unsound mind and wholly incapable of transacting any kind of business; that, after said deed and contract were made, the defendant, who was the son of said Spaldin Ransom, well knowing the condition of mind of said deceased, and that he would do anything he was requested to do by said defendant, represented to him that said deed and contract were not properly made and that they were not good, and requested him to make him another deed, and that he, defendant, would make a new contract agreeing to perform all the promises and conditions of the other contract, or have such conditions set out in the deed; and defendant further requested and procured said deceased to deliver up to him or to cancel the contract en-

tered into between them on the 9th day of December, as above set forth; that said Spaldin Ransom, being then of unsound mind and not knowing the consequences of his act, did release the defendant from his contract, and together with his wife executed to the defendant, October 9th, 1875, another warranty deed for said real estate; that the said Spaldin Ransom was told by his son, the defendant, in order to induce him to execute said deed, that he, the defendant, had executed an agreement to perform all the acts agreed to be done by him in the contract of December 9th, 1874, and that he had bound himself to pay to the daughters of said Ransom the sum of money named in said contract; that, in fact, no such contract was then executed by the defendant, and never has been. Plaintiffs further allege, that the defendant represented to the said Spaldin Ransom, and promised him, if he would make to him said second deed, that he might reserve in said deed the dwelling-house on said land then occupied by said Ransom, during his life, and that such reservation should be set out in said deed; that the defendant himself procured said deed to be written, and, instead of having the same written as agreed with his father, he had the same written without any reservation whatever, the same being written to convey an absolute fee simple interest in said real estate. And plaintiffs further allege, that Spaldin Ransom could not read writing at that time, and did not read said deed or any part of it, and the same was not read to him; that the defendant told said Ransom before he executed said deed, that he had executed said contract as he had promised, and that said deed was written with the reservation therein as he had promised; that the said Spaldin Ransom never knew to the time of his death that his other children besides the defendant had not been provided for as agreed in said first contract, nor that said deed was not written as agreed upon; that the defendant did not comply with said first contract or perform any of its promises or conditions; that he paid no consideration whatever for said real estate, either by performing his said agreement or in any other way; that he took

possession of said real estate on the —— day of ————, 18—,. and has continued in possession and received the rents and profits thereof ever since, amounting in value to $1,000."

The paragraph proceeds to allege the death of Spaldin Ran- som, and sets out the respective rights to the land claimed by the parties, and prays judgment for $1,000, that the deeds be adjudged void and set aside, and for the partition of the land..

The fifth paragraph need not be noticed as it was dismissed by the plaintiffs during the progress of the trial.

The defendant demurred severally to the third and fourth paragraphs, for want of sufficient facts, and the demurrer was. sustained as to the third, but overruled as to the fourth.

Issue; trial by jury; verdict and judgment for the de- fendant.

The plaintiffs below, appellants here, have assigned error upon the sustaining of the demurrer to the third paragraph. of complaint, and upon the overruling of a motion made by them for a new trial. The appellee has also made a cross as- signment of error. Of these in their order.

The appellants claim that the matters to be performed by the defendant as the consideration for the land, as set up in the third paragraph, are conditions subsequent, and that, upon the non-performance of them by the defendant, his title to the land became forfeited.

We need not decide whether or not the stipulations to be performed by the defendant amount to conditions subsequent.. If they do not, the paragraph is obviously bad. If they do,. it is still radically defective for the following reasons, if for no other: This suit was commenced in 1876, and as it ap- pears in the paragraph that Spaldin Ransom died in 1876, it appears that none of the sums of money to be paid by the de- fendant were due when the action was commenced. More- over, no demand appears to have been made for payment.

The stipulations to be performed by the defendant, other than the payment of the money to the children and grand- children of Spaldin Ransom, were exclusively for the benefit.

of said Spaldin, and he does not appear to have made any demand of performance, which was necessary in order to work a forfeiture of the estate. In the case of *Lindsey* v. *Lindsey,* 45 Ind. 552, 567, it was held to be " well settled that before there can be a forfeiture of an estate held on condition subsequent, there must be a demand on the part of the person. entitled to insist upon its performance, whether the condition consists in the payment of money or the performance of some other act, and a refusal on the part of the person in whom the title is vested." See also *Bradstreet* v. *Clark,* 21 Pick. 389 : *Risley* v. *McNiece,* 71 Ind. 434.

The demurrer was properly sustained to this paragraph of complaint.

This brings us to the motion for a new trial. The court having instructed the jury that one of the issues in the cause was whether or not Spaldin Ransom was, on the 9th of December, 1874, when he executed the deed to the defendant, a person of unsound mind, said to them as follows : " If, when Spaldin Ransom executed the deed dated Dec. 9th, 1874, he had sufficient mind to know and comprehend that he was making a deed, and that he was thereby conveying the real estate therein described to his son, John Ransom, and had an object in so doing which he comprehended, then he was a person of sound mind."

This charge was clearly wrong, and well calculated to mislead the jury. It can not be true, according to our statutory definition of mental unsoundness, that a person having sufficient mind to know and comprehend that he is making a deed conveying his real estate, having an object in so doing which he comprehends, is necessarily a person of sound mind. A monomaniac might have mind enough to fully comprehend the effect of his conveyance, and have an object in making it which he understands, and yet he may have been prompted to make it by some mental derangement. For example, a father may make a deed to one of his children, the effect of which he fully comprehends, his object being to prevent his other

children from sharing in the land after his death, acting under some insane delusion in respect to his other children, as that they are his enemies.

The statute provides that "Persons of unsound mind and infants may not alien lands or any interest therein." 1 R. S. 1876, p. 361.

The meaning of the words "persons of unsound mind" is defined by the statute as follows: "The words 'persons of unsound mind,' as used in this act or any other statute of this State, shall be taken to mean any idiot, *non compos*, lunatic, monomaniac, or distracted person." 2 R. S. 1876, p. 598, section 1.

Monomania is defined to be a derangement of a single faculty of the mind, or with regard to a particular subject only. *Freed* v. *Brown*, 55 Ind. 310. And yet a monomaniac can not make an irrevocable conveyance of land. The counsel for the appellee have cited the following cases in this State in support of the charge, but they do not sustain it: *Rush* v. *Megee*, 36 Ind. 69; *Bundy* v. *McKnight*, 48 Ind. 502; *Lowder* v. *Lowder*, 58 Ind. 538; and *Todd* v. *Fenton*, 66 Ind. 25.

For the error in giving the instruction above set out, the judgment below will have to be reversed. Objection is made to some other instructions given, but we deem it unnecessary to notice them. A question is also made as to the competency of some of the witnesses, but as the law on the subject has been in some degree modified since the trial by the revision of 1881, the question as presented may not again arise. We therefore pass it.

We come to the cross assignment of error. The appellee has assigned separately that the first and second paragraphs of the complaint do not state facts sufficient to constitute a cause of action. No question is raised by these assignments. Nothing less than an assignment that the complaint, as an entirety, does not state facts sufficient, will raise any question. This subject was thoroughly elucidated in the case of *Trammel* v. *Chipman*, 74 Ind. 474.

Cross errors are also assigned upon the overruling of the demurrers to the fourth and fifth paragraphs of complaint.

The fourth paragraph, we think, was not good.   It alleges, that at the time of making the first deed the grantor was not of sound mind.   This is all the objection made to that deed. If that deed stands, all that is said about making the subsequent one is of no importance.   If that deed was valid, the subsequent transactions can not avoid it.   The paragraph can not be good unless it shows not only a right to avoid the first deed, but also a right to go into court to procure a judgment of avoidance.

The deed not being void, but voidable only, the grantor not having been adjudged of unsound mind at the time of making it, he had the right to avoid or ratify it on becoming sane, and his heirs have the same right.   But the question is, Can they bring an action to set aside the deed without first having done some act evincing an election to disaffirm it?   This they can not do.   *Nichol* v. *Thomas*, 53 Ind. 42.   In an action to set aside such deed, a disaffirmance must be shown, or else no right of action is shown, for until there is a disaffirmance there is no right of action.

In an ordinary action to recover land, in which the complaint is general and does not set out the source of the plaintiff's title, an allegation of disaffirmance would be out of place; but in such case the disaffirmance before suit brought would have to be shown by the evidence.   But if, in such action, the plaintiff should set out the particulars of his title, and show the specific ground on which he based his claim, he would, doubtless, be required to allege a disaffirmance before suit brought.

For these reasons we are of opinion that the demurrer should have been sustained to the fourth paragraph of the complaint.   The ruling on the demurrer to the fifth paragraph is rendered entirely immaterial by the dismissal of it.

The judgment below is reversed, the costs to be equally divided between the appellants and the appellee, and the cause is remanded for further proceedings in accordance with this opinion.