JEWETT ET AL. *v.* FARLOW ET AL.

[No. 12,553. Filed June 30, 1927. Rehearing denied October 28, 1927. Opinion modified and transfer denied November 23, 1928.]

302

Hugh D. Wickens, Frank Hamilton, George L. Tremain and Rollin A. Turner, for appellants.

John E. Osborn and Thomas E. Davidson, for appellees.

McMAHAN, J.—This is an action by Mary Farlow and two others to contest the will of their brother, Charles Jewett, on the ground that he was of unsound mind. From a judgment in favor of plaintiffs declaring the will invalid, the defendants appeal. The error relied on for reversal is the overruling of the motion for a new trial, the particular specifications of which are that the verdict is not sustained by sufficient evidence and the giving and refusal to give certain instructions.

A large part of the briefs of the parties has been devoted to the contention that the verdict is not sustained by the evidence. The mental condition of the deceased when he signed the alleged will was a question of fact. Many witnesses testified to the condition of his mind. The jury found that he was of unsound mind, and that verdict has been approved by the trial judge. Ordinarily, when the evidence is sufficient to sustain the verdict, we do not set it out in our opinions, and it being clear that the evidence in the instant case is amply sufficient to sustain the verdict, we see no necessity for departing from that rule, as no good purpose could be served by so doing.

Appellants complain of instruction 6, given by the court on its own motion. This instruction is copied from instruction 17, given in *VanMeter* v. *Ritenour, Admr.* (1923), 193 Ind. 615, 141 N. E. 329, and, on the authority of that case, we hold the court committed no error in giving it. Appellants' main contention is not that this instruction does not state the law correctly, but that it is in conflict with instruction 4, given by the court. Instruction 4, is, in substance, the same as instruction 7, given in the Van-Meter case. Instruction 4, like instruction 7, in the VanMeter case is not to be commended, but, when considered in connection with other instructions given, could not have been misleading or confusing, and, applied to the case at bar, there is no conflict between it and instruction 6, of which complaint is made. Appellants do not contend the court erred in giving the fourth instruction. If there was any error in giving instruction 4, it was an error in favor of appellants and one of which they are in no position to complain.

In instruction 12, of which complaint is made, the court told the jury that in determining the question of

the soundness or unsoundness of the mind of the testator, they should consider who were the natural objects of his bounty, their treatment of him, their conduct toward him, and whether or not he recognized the natural objects of his bounty as expressed in his will. The objection to this instruction is that it is not applicable to the evidence and misleading because appellees were each recognized and substantially provided for in the will. We cannot agree with appellants in their contention that, since appellees were not wholly disinherited, the giving of this instruction was error.

Instruction 15 was to the effect that it was the province of the jury to determine from the evidence who were the natural objects of the testator's bounty; whether he made a natural or unnatural disposition of his property; whether the plaintiffs or either of them were the natural objects of his bounty; whether he disposed of his property, with reference to plaintiffs or either of them, as he should have been reasonably expected to do, and if the jury found he selected objects of his bounty differing from those designated by the laws of nature, such facts might be considered, in connection with the other evidence, in determining the question of soundness or unsoundness of the mind of the testator.

Appellants say the objects of one's bounty as designated by natural law mean the next of kin of the testator and that, while the language of this instruction is not clear, its apparent meaning, as applied to this case, is that a distribution to his next of kin other than given by law involved unnatural conduct indicating a want of testamentary capacity. They also say it contains a declaration of a supposed fact rather than a statement of a proposition of law. Another contention is that it was error for the court to tell the jury that if, "under all the evidence in the case," the testator did not dispose of his property with reference to plain-

tiffs as he should have been reasonably expected to do, such fact might be considered in reaching a conclusion as to the soundness or unsoundness of mind. The objection to this particular part of the instruction is that it should have limited the jury to the evidence bearing upon the particular subject covered by the instruction. While it would have been better if the court had expressly limited the jury to a consideration of the evidence bearing on the subject covered by the instruction, the failure so to do does not constitute reversible error.

Instruction 7, requested by appellants and refused relates to the right of a person having sufficient mental capacity to make a will, to dispose of his property as he sees fit, and is covered by other instructions which were given.

Appellants' requested instruction 11, which the court refused to give, is as follows: "To constitute sufficient mind to execute a will, the testator need only have sufficient mind and memory to comprehend and hold in mind during the execution of a will the following matters: (1) Sufficient mind and memory to enable the testator to know the extent and value of his estate; (2) the number and names of the persons who are the natural objects of his bounty; (3) their deserts with reference to their treatment of him; and (4) sufficient memory that he can keep these things in mind long enough to have his will prepared and executed, *and it is not necessary that he actually does have these matters in mind at the time that the will is executed. It is only requisite that he have the degree of mind and memory above set out, and it is not necessary that you find that he had the matters stated above in mind at the time he executed the will in suit, in order that the same may be valid.*" (Our italics.)

Appellants say the part italicized is not covered by any instruction given, and that the failure to give this in-

struction as tendered is reversible error. The court, in its instructions 8 and 9, fully and correctly instructed the jury as to the requirements and mental capacity which a person must possess in order to render him capable of making a will. These instructions follow the law as announced many times by the Supreme Court. They are good models to follow and for that reason we set them out in full:

Instruction 8. "A statute of this state provides that the words 'person of unsound mind' shall include any lunatic, idiot, non compos, monomaniac, or distracted person. However, it is not every degree of mental unsoundness which renders a person incapable of making a valid will. A person may be of unsound mind in respect to some particular subject or matters that do not relate to the disposition of his property, and yet, if he has sufficient mind to enable him to know and understand the extent and value of his property, the number and names of those who are the natural objects of his bounty, their situations and conditions, and their deserts with reference to their conduct towards him and their treatment of him, and he is able to keep these things in his mind long enough to form a rational judgment in relation to them, and to have his will prepared and executed and to understand the nature of the business in which he is engaged, he is capable of making a valid will. If he has sufficient mental capacity to meet the above requirements, he is capable of making a valid will, though his mind be weak and he be illiterate."

Instruction 9. "The law does not undertake to measure a person's intellect and to define the exact quality of mind and memory which he shall possess to authorize him to make a will, yet it does require him to possess mind and memory sufficient to know the extent and value of his property, the number and names of the persons who are the natural objects of his bounty, their

necessity, their deserts with reference to their conduct toward him and treatment of him, and that he shall have sufficient active memory to retain all these facts in his mind long enough to have his will prepared and executed. If he is not in the possession of mental faculties to this extent, he is of unsound mind within the meaning of the law. And if you find by a fair preponderance of the evidence that the said Charles Jewett was of unsound mind as above defined, the will in controversy is invalid."

These instructions are sufficiently clear as to the strength of mind a person must have in order to be capable of making a will, and to inform the jury that no other requisites are necessary. When the court specifically told the jury that a person possessing a "sufficient mind to enable him to know and understand the extent and value of his property, the number and names of those who are the natural objects of his bounty, their situations and conditions, and their deserts with reference to their conduct toward him and their treatment of him, and he was able to keep those things in mind long enough to form a rational judgment in relation to them and to have his will prepared and executed and to understand the nature of the business in which he is engaged," he was capable of making a valid will, it would have been superfluous for the court to have enumerated anything such person was not required to possess. Things not included in the necessary requirements were, of course, excluded.

The jury, in answer to interrogatories, specifically found that at the time he executed the will in question, Charles Jewett did not have sufficient mind and memory to know his mother and his brothers and sisters, together with their names, their respective stations in life, the relations they sustained to him, to know the extent and value of his property, and that he did not have a mind and memory sufficiently strong

to know and retain these things while making the will in question. In view of such facts, a verdict for appellants could not under the evidence have been sustained.

No reversible error being shown, the judgment is affirmed.

Dausman, J., absent.

## On Petition for Rehearing.

McMahan, J.—The court refused to give instruction 13, tendered by appellants, and which is as follows: "One of the witnesses to the execution of the will has not testified concerning the same. So far as appears in this trial, the testimony of this witness was equally available and could have been procured by either of the parties to this cause. Therefore, you must not draw any inference for one party or against the other because this witness has not been called to testify at this trial."

The will in question was prepared by one of appellants' attorneys in his office in Decatur county. He dictated the will to his stenographer, Flora Osting, who also signed the will as a witness to its execution. There is no evidence that appellees or either of their attorneys knew Miss Osting or had any knowledge as to where she resided. Our attention has not been called to any evidence which would tend to show where she resided, other than what might be inferred from the testimony of the attorney who prepared the will. He testified that, at the time of the trial, Miss Osting was at Culver, Indiana; that he saw her there in July previous to the trial and talked to her, and that no effort was made to take her deposition or to have her present as a witness. Assuming, without deciding, that the tendered instruction would have been proper in a case where the absent witness was equally available, and could have been procured by either of the parties, there was no error in re-

fusing the tendered instruction, since the evidence does not show the absent witness was equally available to the parties.

Rehearing denied.

Dausman, J., absent.