WALTON L. COLLINS *v.* JACK K. DUNIFON AND GASOLINE EQUIPMENT SERVICE COMPANY, INC.

[No. 3-873A108. February 18, 1975.]

202

*Ronald L. Sowers, M. Robert Benson, Torborg, Miller, Moss, Harris and Sowers,* of Fort Wayne, for appellant.

*William F. McNagny, Barrett, Barrett and McNagny,* of Fort Wayne, for appellees.

GARRARD, J.—On January 6, 1969, the appellant (Collins) was injured in an automobile collision with a vehicle driven by appellee Dunifon, who was alleged at the time to have been acting as an employee of the appellee Gasoline Equipment Service Company, Inc. (the defendants).

Sometime prior to August 31, 1970, Collins employed an attorney to bring an action for his injuries.[1] Although the attorney engaged in correspondence with the defendants' insurance carrier, no suit was commenced until September 21, 1971. At that time, defense counsel promptly asserted the statute of limitations as an affirmative defense and moved for summary judgment.

Summary judgment was originally granted in May 1972, but on motion, was subsequently set aside and permission was granted to Collins to file opposing affidavits. In March 1973, the motion was again submitted and granted.

On appeal, Collins asserts the existence of two genuine issues of material fact, either of which, if resolved in his favor, would avoid the statutory bar. These are estoppel and the alleged mental incompetence of Collins.

The defendants respond that no basis for estoppel appears, and that it was the negligence of Collins' counsel rather than any alleged mental disability that permitted the statute to expire.

## I. ESTOPPEL

On August 31, 1970, Collins' attorney wrote the defendant company and advised them of his employment. In this letter he suggested that if their representative was willing to discuss settlement, the representative should contact him.

On September 17, the company's insurance carrier replied by letter, stating:

> "Yours of August 31st to Gasoline Equipment Service Co. has been forwarded to the undersigned. Kindly forward your claim properly documented with verified bills, medical reports, and your evaluation for our early attention.
>
> We will be happy to discuss the matter with you fully upon receipt of the above."

1. The attorneys representing Collins on appeal were not involved in the proceedings until shortly before summary judgment was granted the second time.

On September 22, Collins' attorney wrote to the carrier, supplied information supporting some of the special damages, and advised the carrier that he was not in a position to evaluate the total claim. This letter concluded with:

"I will be in touch in the immediate future concerning the final analysis on this matter."

The record discloses no other contacts between the parties until the end of March 1971, although the accident had occurred January 6, 1969. On March 30, the attorney wrote to the carrier again. This letter set out additional information on special damages. It also contained the assertion that the attorney was "relying upon your indication of desire to proceed with settlement negotiations on this matter, and it is for the reason of our moratorium . . . ."

On April 1 the carrier replied that there had been no moratorium beyond the statute and their file had been closed.

After another letter dated August 17, to which he received the same response, the attorney filed suit on September 21.

We are, of course, cognizant of the requirement that in reviewing the propriety of a summary judgment, the materials on file are to be liberally construed in favor of the opponent of the motion, and any doubt as to the existence of a genuine issue of material fact must be resolved against the proponent of the motion. *Podgorny* v. *Great Central Insurance Co.* (1974), 160 Ind. App. 244, 311 N.E.2d 640; *Doe* v. *Barnett* (1969), 145 Ind. App. 542, 251 N.E.2d 688.

Furthermore, neither the defendants nor this court dispute that a party may, by express agreement or course of conduct, place himself in a position where he will not be permitted to assert the expiration of a statute of limitations as a defense. See, e.g., *Marcum* v. *Richmond Auto Parts Co.* (1971), 149 Ind. App. 120, 270 N.E.2d 884.

However, one of the necessary elements to do so is that there be conduct on the part of the party to be charged which

is calculated to lead the other party to inaction. *Erie-Haven, Inc.* v. *First Church of Christ* (1973), 155 Ind. App. 283, 292 N.E.2d 837; *Marcum, supra.* For silence to satisfy the conduct requirement, there must be not only opportunity to speak, there must be an imperative duty to do so. *French* v. *National Refining Co.* (1940), 217 Ind. 121, 26 N.E.2d 47; *Erie-Haven, Inc., supra.*

Here there was nothing in the relationship of the parties or in their dealings imposing upon the defendants a duty to speak. The carrier's indication of a mere willingness to discuss settlement with Collins' attorney, at a time several months before the expiration of the statute of limitations, must be deemed as a matter of law insufficient to constitute the basis for any reasonable inference that the carrier would not rely upon the statute so as to mislead or lull Collins into inaction. (For an example of affirmative conduct that would support such an inference, see *Marcum, supra.*)

## II. UNSOUNDNESS OF MIND

IC 1971, 34-1-2-5 (Burns Code Ed.), which is also applicable to Collins' claim for personal injuries, provides:

"Any person being under legal disability when the cause of action accrues, may bring his action within two (2) years after the disability is removed."

In addition, the miscellaneous definitions section of the statute provides:[2]

"[Third]    The phrase 'of unsound mind' includes idiots, noncompotes [*non compos mentis*], lunatics and distracted persons."

\*   \*   \*

"[Sixth]    The phrase 'under legal disabilities' includes persons within the age of twenty-one [21] years, or of unsound mind, or imprisoned in the state's prison, or out

2.  This act was amended in 1973 to change "persons within the age of twenty-one years" to "persons under the age of eighteen years."

of the United States." IC 1971, 34-1-67-1 (Burns Code Ed.)

Prior cases have noted the requirement that the disability exist when the action accrues, *Walker* v. *Hill* (1887), 111 Ind. 223, 12 N.E. 387; and that our statute for relief does not toll the basic statute. Instead, the basic statute continues to run, but IC 1971, 34-1-2-5, in effect, simply renders its running inapplicable by providing a special limitation, or grace period, of two years after the disability is removed. *Chaffin* v. *Nicosia* (1974), 261 Ind. 698, 310 N.E. 2d 867; *Walker, supra.*

In support of his contention that there is a genuine issue as to whether he is entitled to the benefits of IC 1971, 34-1-2-5, Collins points to seven affidavits he filed in opposition to the defendants' motion.

He also urges us to consider an eighth affidavit which was filed in conjunction with his motion to correct errors. This affidavit was a statement from a Fort Wayne physician voicing his opinion of Collins' incompetence. We find this affidavit is not properly before the court and presents nothing for our consideration. Indiana Rules of Procedure, Trial Rule 59(D) does provide:

> "When a motion to correct errors is based upon evidence outside the record, the cause must be sustained by affidavits showing the truth thereof served with the motion."

This, however, does not mean that a party may simply offer by affidavit, in connection with his motion to correct errors, evidence which he neglected to present at the prior proceeding. Rather, the provision provides the basis for disclosing on the record matters constituting a basis for correction of error which occurred during the prior proceedings, but were not reflected in the record. Accord: *Jackson* v. *Beard* (1970), 146 Ind. App. 382, 255 N.E.2d 837, 4 Harvey & Townsend, *Indiana Practice* 131, 132. Of course, the provision also permits disclosure of newly discovered

evidence by affidavit pursuant to TR. 59(A)(6). However, Collins' eighth affidavit does not purport to assert that the doctor's opinion could not, with reasonable diligence, have been discovered and produced within the time allowed by the rules for filing affidavits in opposition to a motion for summary judgment.

The seven affidavits filed in connection with the second submission of the motion for summary judgment may be summarized as follows:

David Sorg, a physician, stated that he had examined Collins on October 23, 1969. It was his clinical impression that Collins was suffering from significant emotional disability or impairment at that time. He seriously questioned whether Collins was able to properly manage his affairs prior to and subsequent to that date.

Galen Huffman, a physician with a specialty in psychiatry, stated that he examined Collins on October 29, 1969. It was his diagnostic impression that Collins suffered from a possible conversion reaction.

Ursie Longardner, the mother of Collins' deceased wife, stated that Collins had changed after his wife died in February 1966. She stated that, in her opinion, based upon what she knew of the family and the way Collins acted, she did not think Collins "was in his right mind and after [Mrs. Collins] died [Collins] did not try to manage his affairs and everything went to pot."

The other four affidavits were from an attorney who had represented contract sellers in securing a termination of Collins' contract to buy his home; the employment supervisor at Collins' old employer; a former next-door neighbor; and a welfare worker who had been involved with the Collins family. Each of these affidavits purported to relate facts indicating that Collins' actions in his work, his home, and in meeting his obligations changed sometime after his wife died. However, none voiced opinions of incompetence except the welfare worker who stated, "It was apparent from my investigation

that Walton Collins had been unable to carry on in the operation of his home and the management of his family after the death of his wife, Barbara, in February, 1966."

In treating this issue, the court entered the following finding:

> "The court does not feel that it needs to determine the question of incompetency, as raised by these affidavits, for the reason that the failure to file within the statutory period was not the result of the incompetency or alleged incompetency, because the plaintiff had secured an attorney well before the expiration of the statutory period, and said attorney had communicated with the plaintiff on September 22, 1970, well before the expiration of the period of limitations, informed defendants that he would be in touch with them in the immediate future, and that for this reason the alleged incompetency did not stop the running of the statute of limitations."

If by this finding the court meant that the statutory grace period afforded persons under legal disability has no application unless the person can establish that the disability was the sole proximate cause of his inaction within the basic period of limitation, we disagree. Such an interpretation would conflict with the plain and unambiguous language of the statute.

Rather, we believe the court was addressing the specific disability of unsoundness of mind. Furthermore, the court correctly perceived that the relevant proof is whether the person claiming the benefit of the extension statute is incapable of either understanding the rights that he would otherwise be bound to know, or of managing his affairs, with respect to the institution and maintenance of a claim for relief.

This accords with the Indiana cases considering the relevant mental capacity necessary to uphold or avoid specific activity, such as making a will, *Jewett* v. *Farlow* (1927), 88 Ind. App. 301, 157 N.E. 458; an *inter vivos* gift, *Teegarden* v. *Lewis* (1895), 145 Ind. 98, 40 N.E. 1047; and in the more recent cases, a contract. *Mahin* v. *Soshnick* (1958), 128 Ind. App.

342, 148 N.E.2d 852. It is also the result reached in other jurisdictions. See, e.g. *Peach* v. *Peach* (1966), 73 Ill. App. 2d 72, 218 N.E.2d 504; *Gottesman* v. *Simon* (1959), 169 Cal. App. 2d 494, 337 P.2d 906.

The issue of unsoundness of mind is ordinarily a question for the trier of fact. *Fiscus* v. *Turner* (1890), 125 Ind. 46, 24 N.E. 662; *Schuff* v. *Ranson* (1881), 79 Ind. 458. Therefore, if the court must weigh conflicting evidence to reach a decision, summary judgment would not be appropriate.

As stated by the Michigan court in *Davidson* v. *Baker-VanderVeen Const. Co.* (1971), 35 Mich. App. 293, 192 N.W. 2d 312:[3]

> "The averments in the affidavits . . . provide a more than adequate basis upon which a trier of fact could infer and conclude that he was suffering from a mental derangement such as would prevent him from comprehending rights he is otherwise bound to know. Whether inferences or conclusions favorable to Davidson's contention should be drawn from such averments is a matter entrusted to the trier of fact and not to be decided summarily as a matter of law. *Decision requires an appraisal and an exercise of judgment concerning the extent of his mental infirmity.* It is not a question on which all reasonable men would necessarily reach the same conclusion." 192 N.W.2d 318. (Our emphasis)

In the case before us, the affidavits are to be liberally construed in Collins' favor and any doubt remaining as to the existence of a genuine factual issue must be resolved against the defendants. *Podgorny, supra; Doe, supra.*

One affidavit asserts inability of Collins to manage his affairs after his wife died and prior to the collision in January 1969. Another asserts the condition (continued) until at least October 1969, which was within two years of the actual commencement of suit. While the affidavits are not

---

3. In *Davidson* the court reversed an accelerated judgment in favor of defendant's assertion of the statute of limitations where plaintiff had employed counsel and timely commenced suit against one defendant but not the others. Plaintiff claimed he was "insane" within the meaning of the Michigan extension statute.

artfully drawn in terms of the statute, taken together they do demonstrate the existence of a genuine issue of fact regarding his possible legal disability, unless the additional fact that Collins admittedly employed counsel within the period of the base statute conclusively demonstrates that he was not "of unsound mind" within the meaning of IC 1971, 34-1-2-5.

The Michigan court considered this question in *Davidson* and held:

> "We are not prepared to say that ability to retain a lawyer is conclusive evidence of mental competence for the purpose of this tolling provision. * * * The fact that he retained counsel is some evidence that he was not mentally deranged, but it does not conclusively establish that fact." 192 N.W.2d at 315.

This position was reaffirmed in *Hill* v. *Clark Equipment Co.* (1972), 42 Mich. App. 405, 202 N.W.2d 530.

We are persuaded of the correctness of this position. To hold otherwise would eliminate any possible relevance of such questions as: What prompted Collins to consult the lawyer that represented him? Did Collins arrange for the attorney's employment, or did someone else? Having contacted counsel, did Collins exhibit further interest? Was he able to co-operate with counsel and give him necessary assistance?

In a given case, the answers to such questions might be most compelling. We, also, believe this is in keeping with the policy of our law which favors the protection of infants and the mentally incompetent.

Accordingly, summary judgment was not appropriate, and we must reverse. However, in so doing, we recognize that because of the potentially dispositive nature of the affirmative defense, the court may wish to try the question separately pursuant to Rule TR. 42(B).

The summary judgment is reversed.

Staton, P.J. and Hoffman, J. concur.