

**FILED**

Dec 19 2023, 8:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan L. Ciyou
Ciyou & Associates, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Thomas B. Roberts
Indianapolis, Indiana

I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Maria del Carmen Casimiro Murietta,<br><br>*Appellant-Petitioner,*<br><br>v.<br><br>Guillermo Fernandez Romero,<br><br>*Appellee-Respondent.* | December 19, 2023<br><br>Court of Appeals Case No.<br>23A-DC-193<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Joel A. Schneider, Magistrate<br><br>Trial Court Cause No.<br>49D16-2112-DC-10561 |

**Opinion by Judge Bradford**
Judge Vaidik concurs.
Judge Brown dissents with separate opinion.

**Bradford, Judge.**

# Case Summary

Maria del Carmen Casimiro Murietta ("Maria") and Guillermo Fernandez Romero ("Guillermo") were married and are the parents of three children. Maria and Guillermo separated in January of 2021, and, in December of that year, Maria filed for divorce. Maria appeared *pro se* at the evidentiary hearing, during which she referred to the parties' prenuptial agreement ("the Agreement"), in which the parties had agreed that all property owned by Maria prior to the parties' marriage shall remain Maria's separate property in the event of a divorce. Although Maria had referred to the Agreement, due to her limited understanding of the proceedings and her erroneous belief that the Agreement had been submitted to the trial court by her prior counsel and was therefore a part of the record, she did not seek to have it admitted into evidence during her case-in-chief. Maria did, however, seek to have the Agreement admitted into evidence at the end of the hearing. The trial court denied Maria's attempt to submit the Agreement into evidence. In dividing the marital estate, the trial court included the property that was subject to the Agreement. Maria filed a motion to correct error, which the trial court denied. On appeal, we conclude that the trial court abused its discretion in denying Maria's motion to correct error. As such, we reverse the judgment of the trial court and remand for a new trial wherein the Agreement can be presented for consideration assuming a proper foundation for its admission can be met.

# Facts and Procedural History

[2] In January of 2016, Maria and Guillermo were married. They had had two children together prior to their marriage and had one child together during their marriage. Prior to their marriage, Maria and Guillermo had entered into the Agreement, which indicated that all property owned by Maria prior to the parties' marriage would not be considered part of the marital estate and would be considered Maria's sole property in the event of divorce. On January 20, 2021, the parties separated, and on December 9, 2021, Maria filed for divorce.

[3] Maria was initially represented by counsel who was forced to withdraw her representation after being suspended from the practice of law. Maria claims to have provided counsel with numerous documents, including the Agreement. Maria was then represented by subsequent counsel, who filed a motion to withdraw from representation prior to the evidentiary hearing, citing a breakdown of attorney-client communication.

[4] On October 3, 2022, the trial court held a virtual evidentiary hearing. Maria appeared at the evidentiary hearing *pro se*. Guillermo appeared and was represented by counsel. A translator was present given Maria's and Guillermo's limited capabilities to speak English.

[5] While Maria indicated that she was ready to proceed, it is clear from her statements to the court that she was unfamiliar with the legal process and the terminology used by the court. She did not seem to understand basic trial tenets, such as what evidence is or what she was expected to present to the court. *See* Tr. Vol. II p. 36. She also did not appear to have understood that

presenting relevant documents, namely the Agreement, to her attorney was not sufficient to ensure judicial review of the document. *See* Tr. Vol. II p. 53. Once it became clear to Maria that submitting the Agreement to her counsel had not been sufficient to ensure that it would be submitted for the trial court's consideration, Maria attempted to submit the Agreement into evidence. The trial court did not accept the Agreement into evidence.

[6] The trial court issued a decree of dissolution on November 18, 2022, in which it included property that had been owned by Maria prior to the parties' marriage and ordered an equal division of the marital estate. On December 13, 2022, Maria filed a motion to correct error in which she alleged as follows:

> 3. Petitioner was previously represented by counsel and presented her prior counsel with a copy of the Premarital Agreement, attached hereto as Exhibit A, which was executed by the parties on January 14, 2016. This agreement set forth the division of assets and debts in the case of a dissolution of marriage.
>
> 4. Petitioner was unaware that counsel failed to present a copy of the premarital agreement to the Court and did not know the same was not in fact provided to the Court until such time as she sought alternate counsel to review the final Decree of Dissolution of Marriage.
>
> 5. Petitioner was *pro se* at the final hearing and had a translator present to assist her given that English is her second language. Nonetheless, Petitioner continued to advise the Court that there were no assets or liabilities to be divided, based on her belief that the Court had a copy of the Premarital Agreement which in fact would have required the Court to divide the assets and liabilities as Petitioner was requesting.

**\*\*\*\***

7. Had Petitioner not mistakenly believed that her prior counsel had submitted a copy of the Premarital Agreement to the Court, she would have ensured she provided the same herself. Had the Court been provided with a copy of the parties' Premarital Agreement in advance of the hearing, it would have been required to distribute funds in accordance with the agreement, which have resulted in Petitioner not being required to pay a cash equalization payment to Respondent.

8. Petitioner has demonstrated a meritorious defense and mistake such that the Court should set aside the property settlement provisions of the Decree of Dissolution of Marriage.

9. Petitioner is respectfully requesting this Court set aside the property division set forth in the Decree of Dissolution of Marriage and for all other relief just and proper in the premises.

Appellant's App. Vol. II pp. 50–52 (emphasis added). The trial court denied Maria's motion to correct error on January 17, 2023.

# Discussion and Decision[1]

While the parties largely focus their arguments on the question of whether Maria was entitled to relief under Trial Rule 60(B), they acknowledge, and the record demonstrates, that Maria appeals following a denial of her motion to

---

[1] Guillermo has filed a motion to strike certain documents, including the Agreement, from Maria's appendix. In a separate order handed down simultaneously with this opinion, we deny Guillermo's motion.

correct error. While there may be some overlap between a Trial Rule 60(B) motion for relief from judgment and a Trial Rule 59 motion to correct error, the trial rules discuss the two separately and provide two different potential avenues for relief. Given that Maria filed a motion to correct error (and only alternatively argued that she was entitled to relief under Trial Rule 60(B)) and the trial court denied that motion, the question on appeal is most appropriately framed as whether the trial court abused its discretion by denying Maria's motion to correct error.

[8] It is well established that

> [t]he trial court is permitted to alter, amend, or modify its judgment without limitation "up to and including the ruling on a motion to correct error." *Rohrer v. Rohrer*, 734 N.E.2d 1077, 1081 (Ind. Ct. App. 2000) (quoting *Hubbard v. Hubbard*, 690 N.E.2d 1219, 1221 (Ind. Ct. App. 1998)). A trial court is vested with broad discretion to determine whether it will grant or deny a motion to correct error. *Volunteers of America v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656, 658 (Ind. Ct. App. 2001). A trial court has abused its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences therefrom. *Id.*

*Jones v. Jones*, 866 N.E.2d 812, 814 (Ind. Ct. App. 2007). In reviewing a denial of a party's motion to correct error, "we look at the record to determine if (a) the trial court abused its judicial discretion; (b) a flagrant injustice has been done to the appellant; or (c) a very strong case for relief has been made by the appellant." *Id.*

[9]     While evidence must be offered during the course of a trial, the trial court has the discretion to "permit a party to present additional evidence or testimony once the party has rested, once both parties have rested, or after the close of all of the evidence." *In re Paternity of Seifert*, 605 N.E.2d 1202, 1207 (Ind. Ct. App. 1993), *trans. denied*. Moreover, "Indiana courts have long had both statutory and inherent equitable powers to set aside or modify erroneous or inequitable judgments." *Kelly v. Bank of Reynolds*, 171 Ind. App. 515, 518, 358 N.E.2d 146, 148 (1976). In this case, the record reveals that Maria's motion made a very strong case that she was entitled to relief because the trial court's judgment had resulted in a flagrant injustice to her. As such, we conclude that the trial court abused its discretion in denying Maria's motion to correct error.

[10]    The record demonstrates that Maria, a *pro-se* litigant with a language barrier to the court, did not understand the proceedings or what the court was asking of her. Maria only proceeded *pro se* after both her first and second attorneys had been granted permission to withdraw their representation. Maria's first attorney, to whom she claims to have given numerous documents including the Agreement, withdrew after being suspended from the practice of law. Her second attorney withdrew following a breakdown of attorney-client communication and trust. While Maria may be partially responsible for her second counsel's withdrawal, she bore no responsibility for the fact that her first attorney, with whom she seemed to have some level of comfort, had to withdraw from the case.

The record is also clear that Maria was unfamiliar with the legal process and the terminology used by the court. She did not seem to understand basic trial tenets, such as what evidence is or what she was expected to present to the court. *See* Tr. Vol. II p. 36. She also does not appear to have understood that presenting relevant documents, namely the Agreement, to her attorney was not sufficient to ensure judicial review. *See* Tr. Vol. II p. 53. While she did not tender the Agreement as evidence during her case-in-chief, Maria made multiple references to it. She also attempted to tender the Agreement at the end of the hearing once she apparently came to understand that it had not previously been submitted to the court. At this point, the trial court simply denied her attempt to submit the Agreement with no further inquiry.

We agree with Maria that "[i]gnoring such a document due to a procedural oversight can have life-altering financial and personal implications for the parties involved." Appellant's Reply Br. p. 5. Furthermore, while *pro-se* litigants are generally held to the same standard as an attorney, the Indiana Supreme Court has indicated that a trial court may, under some circumstances, take steps necessary to prevent a good faith *pro-se* litigant, like Maria, from being placed at an unfair disadvantage. *See Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014) ("Even if a court may take reasonable steps to prevent a good faith pro se litigant from being placed at an unfair disadvantage, an abusive litigant can expect no latitude.") The Indiana Supreme Court has further indicated that

a court should not blindly adhere to all of its rules. "Although our procedural rules are extremely important, it must be kept in mind that they are merely a means for achieving the ultimate end of orderly and speedy justice. We must examine our technical rules closely when it appears that invoking them would defeat justice; otherwise we become slaves to the technicalities themselves and they acquire the position of being the ends instead of the means." [*Am. States Ins. Co. v. State*, 258 Ind. 637, 640, 283 N.E.2d 529, 531 (1972)].

*Meredith v. State*, 679 N.E.2d 1309, 1311 (Ind. 1997) (internal quotation omitted). While Maria had rested her case when she ultimately attempted to submit the Agreement, the evidentiary hearing had not concluded, and the trial court easily could have allowed limited questions relating to the Agreement. Based on the particular facts and circumstances of this case, we conclude that the trial court abused its discretion by failing to admit the Agreement into evidence when tendered to the court by Maria.[2]

[13] In reaching this conclusion, we acknowledge that prenuptial agreements "are favored by the law as promoting domestic happiness and adjusting property questions that otherwise would often be the source of litigation." *Boetsma v. Boetsma*, 768 N.E.2d 1016, 1020 (Ind. Ct. App. 2002), *trans. denied*. These agreements "are legal contracts by which parties entering into a marriage relationship attempt to settle the interest of each in the property of the other

---

[2] While we are cognizant of the challenges facing trial judges with respect to *pro-se* litigants, we are troubled by the trial court's apparent "move the case along approach" in this case, especially considering the fact that the evidentiary hearing was conducted remotely, causing more confusion for a *pro-se* litigant who already was at a disadvantage due to a language barrier with the court.

during the course of the marriage and upon its termination by death or other means." *In re Marriage of Boren*, 475 N.E.2d 690, 693 (Ind. 1985). The Indiana Supreme Court "has consistently held that [prenuptial] agreements, so long as they are entered into freely and without fraud, duress, or misrepresentation and are not, under the particular circumstances of the case, unconscionable, are valid and binding." *Id.* Such agreements "will be liberally construed to effect, so far as possible, the parties' intentions." *Boetsma*, 768 N.E.2d at 1024.

[14] It is undisputed that Maria owned all the property listed in the Agreement prior to the parties' marriage and that Guillermo had contributed nothing to its acquisition. In addition, the authenticity of the Agreement is not disputed. During her case-in-chief, Maria made repeated references to the Agreement. Guillermo did not object to these references or allege at the close of evidence that no such agreement existed. Given the favor granted to prenuptial agreements combined with the facts and circumstances of this case, we conclude that the trial court's order will result in an unjustified windfall for Guillermo and an inequitable and flagrant injustice to Maria because, in order to retain her property, she would be required to compensate Guillermo for the property in contradiction of the Agreement. As such, based on the record before us, we conclude the trial court abused its discretion in denying Maria's motion to correct error.

[15] The judgment of the trial court is reversed, and the matter remanded for a new trial wherein the Agreement can be presented for consideration assuming a proper foundation for its admission can be met.

Vaidik, J., concurs.
Brown, J., dissents with separate opinion.

**Brown, Judge, dissents.**

[16] I respectfully dissent and would affirm the trial court. To the extent the majority considers Maria's December 13, 2022 motion to be a motion to correct error, in her motion she requested that the court "Correct Errors from the Decree of Dissolution of Marriage," did not indicate any errors committed by the trial court, stated that "[h]ad [she] not mistakenly believed that her prior counsel had submitted a copy of the Premarital Agreement to the Court, she would have ensured she provided the same herself," and stated she was "respectfully requesting this Court set aside the property division set forth in the Decree of Dissolution of Marriage and for all other relief just and proper in the premises." Appellant's Appendix Volume II at 51-52. At the January 9, 2023 hearing on her motion, Maria's counsel did not mention Ind. Trial Rule 59, and discussed only Ind. Trial Rule 60(B) in arguing "the mistake is that my client was under the impression that her attorney had filed a copy of the prenuptial agreement with the court" and "we're requesting the Court set aside the Court's final order with regard to the property division and the division of assets and debts, and to proceed with having a hearing and issuing an order that is in agreement with the terms of the prenuptial agreement." Transcript Volume II at 60-61. Maria's counsel later clarified: "What my client's asking is this Court to set aside the decree based off of the fact that she was under the mistaken belief that this Court had a copy of the prenuptial agreement. This clearly falls under the mistake and excusable neglect provision in Trial Rule 60." *Id.* at 64. In her appellant's brief and reply brief, the only error she asserts is that she

believed her prior attorney had submitted the marital agreement. I would find that Maria's motion was a motion for relief from judgment pursuant to Ind. Trial Rule 60(B)(1), and the erroneous belief that her prior attorney had presented the agreement did not constitute mistake or excusable neglect.

[17] Even if Maria's motion were a motion to correct error, it did not comply with Ind. Trial Rule 59(H)(1), which provides that a motion to correct error based on evidence outside the record "shall be supported by affidavits showing the truth of the grounds set out in the motion and the affidavits shall be served with the motion." A party may not offer by affidavit, in connection with his or her motion to correct errors, evidence which he or she neglected to present at the prior proceeding. *Collins v. Dunifon*, 323 N.E.2d 264, 268 (Ind. Ct. App. 1975). "Rather, the provision provides the basis for disclosing on the record matters constituting a basis for correction of error which occurred during the prior proceedings, but were not reflected in the record." *Id.* Maria did not attach any affidavit to her motion to correct error as required, never offered the agreement into evidence, and the agreement was never properly before the trial court.

[18] Ind. Trial Rule 60(B) affords relief in extraordinary circumstances which are not the result of any fault or negligence on the part of the movant. *Wagler v. West Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 371-372 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*, *cert. denied*, 134 S. Ct. 952 (2014). To the extent the majority considers the trial court's judgment a flagrant injustice, before the final dissolution hearing on October 3, 2022, Maria did not move for the appointment of an interpreter, the court provided an interpreter at the

dissolution hearing pursuant to Guillermo's request, and Maria did not indicate she could not understand the interpreter or could not communicate to present her case. The court swore in two interpreters at the start of the hearing and had the first introduce herself to both parties to "make sure they understand [her]," the interpreter and parties conferred, and the interpreter stated: "We understand each other." Transcript Volume II at 4-5. Throughout the hearing, the interpreter made clarifications as necessary.

[19] The court questioned Maria as to whether she was ready to proceed multiple times, and the following exchanges occurred:

> THE COURT: We are set for a half-day final hearing in this matter. Are the parties ready to proceed?
>
> [Maria]: Yes.
>
> [Guillermo's counsel]: Yes, Your Honor.
>
> * * * * *
>
> THE COURT: Okay. So, Ms. Del Carmen, it's -- I guess that's a question. The question that I have -- you've previously indicated that you're ready to proceed. I was ask -- I was just asking, before we get into evidence today, if there are any stipulations, so anything that you and Mr. Roberts have agreed to prior to this hearing or if there's any pre-trial motions. And the Court's not hearing anything to that effect.
>
> [Maria]: The lawyer that I had before, I told her that I didn't want her services anymore, and that's why I'm here today.
>
> THE COURT: Okay. So you are -- since you -- I granted – I granted the motion for your previous attorney to withdraw. So at this point, you are representing yourself, Ms. Del Carmen, which

you're entitled to do. And you have previously indicated that you are ready to proceed this afternoon. So I'm going to confirm that again, that you are ready to proceed.

[Maria]: I am ready, not because I want to, because things were not being done the way that I thought they should have been done, and that's why I don't have a lawyer today.

THE COURT: Okay. So I will indicate that the parties are ready to proceed with their final hearing then. Okay.

*Id.* at 5-6. The record reveals that Maria's second attorney emailed her on August 30, 2022, telling Maria that "you seem to want to go to court," "[i]f you want to do that, you will have to hire another attorney," and "[i]f you just want to go to court for the sake of going to court, then I will withdraw from your case. There is no reason to waste your time and mine if you want to meet with me just to tell me you want to go to court." Appellant's Appendix Volume II at 30. On September 2, 2022, her former attorney emailed her stating that her final dissolution hearing was scheduled for October 3, 2022, attaching a copy of her Motion for Leave to Withdraw Appearance, noting that she would file the motion ten days from September 2nd, notifying Maria that "failure to obtain counsel to represent [her] in this action could result in the Court entering a judgment against [her] or dismissing [her] case," and stating that her hearing would "proceed as scheduled regardless of whether or not [she] hire[d] another attorney." *Id.* at 31. On September 12, 2022, the court granted the motion, and on October 3rd, approximately twenty-one days later, the final dissolution hearing was held. The record does not indicate that Maria sought the services

of other counsel after her second attorney withdrew, requested a continuance, or indicated that she was not ready to proceed.

[20] It is well settled that a *pro se* litigant is held to the same legal standards as a licensed attorney. *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014). A *pro se* litigant "is afforded no inherent leniency simply by virtue of being self-represented." *Id.* *Pro se* litigants are required to follow procedural rules, *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*, and "must be prepared to accept the consequences of their failure to do so." *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016), *reh'g denied*. This Court will "not become an advocate for a party . . . . *Id.* at 984 (internal quotation marks omitted). Ind. Code of Judicial Conduct Canon 2.2 provides that "[a] judge shall uphold and apply the law and shall perform all duties of judicial office fairly and impartially." A judge's role as an impartial decision maker does not permit offering legal advice to *pro se* litigants. *See Reinoehl v. St. Joseph Cnty. Health Dep't*, 181 N.E.3d 341, 362 (Ind. Ct. App. 2021) (holding that "[t]he court did not err by holding the Reinoehls," *pro se*, to the standard of a trained attorney when "dismissing their Amended Complaint without first giving them the opportunity to file a Second Amended Complaint").

[21] Maria acknowledges that she "undoubtedly shares some fault in failing to ensure that her former attorney had produced the Agreement in discovery and in assuming the risk of representing herself at the dissolution hearing." Appellant's Brief at 18. She did not mention the agreement throughout questioning about child custody and support, whether she and Guillermo

owned real estate together, her business, a financial declaration form detailing her assets, and her bank accounts, or while cross-examining Guillermo. The court provided her with ample opportunities to present additional information. After "about two-and-a-half hours of evidence," and closing arguments, Maria referenced an agreement but did not state that she had the agreement with her, explicitly ask the court to admit the agreement, or make an offer of proof regarding the terms of the agreement. Transcript Volume II at 52.

[22] In light of it being well-settled that we hold *pro se* parties to the same standard as attorneys and we expect counsel to know and follow the trial rules, I would affirm the trial court's denial of Maria's motion for relief from judgment.