FERRIS REALTY CO. *v.* ABCO SIGNS, INC.

[No. 19,547. Filed May 16, 1962. Rehearing denied June 26, 1962. Transfer denied March 19, 1964, with dissenting opinion reported in 196 N. E. 2d 893.]

*Henry M. Coombs* and *Frank E. Spencer*, of Indianapolis, for appellant.

*Key, Latham & Strawbridge, Sheldon A. Key, Smith & Jones, John T. Hume III, Grabill & Baker* and *Henry W. Blue*, all of Indianapolis, for appellee.

PFAFF, J.—Appellee brought this action against appellant for breach of a written contract. Appellee's (plaintiff corporation) complaint alleged the execution of said written contract with two persons known as Billy Ginn and Wah Lee, doing business as the Golden Dragon, to furnish and maintain an electrical advertising sign for three years; and that the appellant (defendant corporation), owner of the premises at 2133 North

Meridian Street, Indianapolis, Indiana, leased to said pesons, induced appellee to enter into the contract by agreeing to guarantee the performance of said contract. Appellant denied that it had made such guarantee. Trial to the court resulted in a finding in favor of appellee in the sum of $1,396.00, and judgment was rendered accordingly.

The error assigned here is the overruling of appellant's motion for a new trial. The specifications of that motion are as follows: The decision of the court is not sustained by sufficient evidence; the decision of the court is contrary to law; and the court erred in overruling defendant's motion for finding and judgment.

In support of its contention appellant presents the following four points in the argument portion of its brief:

"1. The written contract, although set out as a part of the allegations of the complaint, and identified by number as Plaintiff's Exhibit #1, was not received in evidence by the court and is not a part of the evidence in this cause.

"2. The plaintiff alleged, as a condition precedent, that the rent and the term of the lease was to start on the date of illumination, and that the sign was to be both installed and illuminated on or before March 1, 1956, (Exhibit 'A' to plaintiff's complaint) but there is no evidence whatsoever that the sign was ever illuminated.

"3. There is no evidence whatsoever that the defendant corporation executed or guaranteed any contract with plaintiff.

"4. There is no evidence to support the judgment entered by the court in the amount of One Thousand Three Hundred ninety-six ($1,396.00) Dollars."

It is elementary that it is incumbent upon appellant to show reversible error by the record it brings to this

court. In support of its first contention appellant says that in its answer under the rules it stated that it was without knowledge as to the allegation of the execution of a written contract and denied the allegations in reference to its execution, etc., of the written guarantee pleaded in the complaint; and that the contract was not introduced in evidence.

The record discloses that appellant did not deny the execution of the contract pleaded under oath or by affidavit. Therefore, the contract could be read in evidence without proving its execution.

"Where a pleading is founded on a written instrument, or such instrument is therein referred to, or when an assignment, in writing, of such instrument is specially alleged in a pleading, such instrument or assignment may be read in evidence on the trial of the cause without proving its execution, unless its execution be denied by pleading under oath, or by an affidavit filed with the pleading denying the execution. . . . " Sec. 2-1033, Burns' 1946 Replacement.

The record herein shows that when appellee offered the contract in evidence, appellant asked for and received permission of the trial court to propound certain questions to appellee's witness, M. H. McIntyre, a salesman for appellee's corporation. The testimony is as follows:

"Mr. Blue: Plaintiff now offers into evidence Plaintiff's Exhibit #1.

"Mr. Combs (Coombs): May I ask a preliminary question please?

"THE COURT: Go ahead.

"Preliminary questions by Mr. Combs (Coombs):

"Q. Let's back up a little—you state you actually took this Lease and Maintenance Agreement and watched Mr. Ferris sign it?

"A. I did sir.

"Q. You were asking him to sign that as President of the Ferris Realty Company on behalf of the Corporation?

"A. That I can't truthfully answer because I don't know. I talked with Mr. Ferris, he represented himself as Mr. Ferris and he personally signed it himself.

"Q. Who was sitting there?

"A. We didn't sit down, we were standing.

"Q. You told him he was merely a guarantor?

"A. I told him that Mr. King would not accept the contract unless he guaranteed the contract.

"Q. You are quite familiar with the contract?

"A. I am.

"Q. Then it was not your contention that if he signed this contract that he was signing it merely as a guarantor?

"A. To guarantee the payment of the contract in case they defaulted.

"Q. Did you ask him to put the Corporation seal on that contract?

"A. I did not.

"Q. Did you ask him to bind himself and the Corporation?

"A. I was asking Mr. Ferris to bind himself to the best of my recollection.

"Q. It was not the intention of your Company or yourself to have this guaranteed by the Ferris Realty Company, is that correct?

"A. I'll tell you personally I'm not clear myself on that point as I am not familiar with those matters. I do know that Mr. Ferris represented himself as being President of the Ferris Realty Company.

"Q. When you did this you did not have him sign as a guarantor but as a co-maker?

"A. I had him to sign as a guarantor.

"Q. You had intended him to sign that endorsement as a personal guarantee?

"A. I do not know who would sign with Ferris Realty Company. He was the only one I had any dealings with and I asked him to do it.

"MR. BLUE CONTINUES QUESTIONING:

"Q. After you had the contract signed by Mr. Ferris what did you do with the contract, Mr. McIntyre?

"A. I returned it to our Company. Mr. King was in the hospital at that time and he had asked me to get it co-signed and when I returned it I was pretty sure he would have it taken care of.

that's all

"WITNESS EXCUSED."

Appellee's witness Robert N. King, Secretary-Treasurer of appellee's corporation, testified on direct examination by Henry W. Blue, as follows:

" . . .

"Q. Are you acquainted with Mr. McIntyre?

"A. Yes sir.

"Q. I will hand you what has been marked for identification as Plaintiff's Exhibit #1 and ask you if you are familiar with that?

"A. Yes sir, I am.

"Q. Does your signature appear thereon?

"A. Yes, I accepted the contract for Abco Signs.

"Q. Under what circumstances did you accept that?

"A. The only way I would accept it was to have a co-signer, Mr. Ferris, because of past performances relative to credit by the other members of this concern.

"Q. Do you recall that day that was signed—that you signed the acceptance?

"A. I only know sir, that it is dated February 14th, 1956, and I wouldn't have dated it any other day then the day I accepted it.

"Q. The date that you accepted it and your signatures appear upon this contract?

"A. Yes, Billy Ginn and Way Lee and Mr. Ferris.

"Q. Did you know Mr. Ferris? .

"A. I knew of Mr. Ferris. I knew Mr. Ferris was the owner of the building in which the Golden Dragon was operating.

" . . . ."

The record herein does not show that appellant made any objections to the introduction in evidence of said contract, being appellee's Exhibit #1. In the case of *United States, etc., Soc.* v. *Watson* (1908), 41 Ind. App. 452, 84 N. E. 29, a similar question was presented and this court said:

"The second (bill) states that the original certificate of insurance was not read in evidence to the jury; that it was introduced by the attorney for appellee and identified by the reporter, but was not read to the jury. Appellant relies upon the cases which hold that, where a written contract is the basis of an action, there must be evidence of the existence of such contract to authorize a verdict. *Higman* v. *Hood* (1892), 3 Ind. App. 456, 458. The record herein shows affirmatively that such instrument was in evidence, and sets it out *in extenso*. The purpose of introducing evidence is to enlighten the jury. When such evidence consists of a written instrument it must be read to the jury unless such reading is waived by the parties, as is frequently done. *All presumptions are in favor of the validity of the judgment and the regularity of the proceedings. We are therefore bound to presume that the reading of the certificate was waived by the appellant. If its bill of exceptions showed further that appellant objected to the introduction of such certificate without reading, and excepted to the overruling of his objection, a different question would be presented.*" (Our emphasis).

We are of the opinion that the emphasized portion of the opinion above quoted is a correct statement of the

law and is controlling here. See also §2-1071, Burns' 1946 Replacement.

Certainly it cannot be maintained that the trial court, hearing the case without the intervention of a jury, did not see or read the exhibit. If there was a mistake or error in showing that the exhibit was not admitted in evidence, it was the duty of appellant to have the record corrected to show that fact.

The record herein discloses that appellee's Exhibit #2 (admitted in evidence without objection) was taken from its accounts receivable ledger and shows that the first payment of rent was received May 3, 1956, by appellee. Such a record would sustain a reasonable inference that the sign was illuminated on or before that date. Therefore, appellant has not sustained its second contention.

Appellant next contends that there is no evidence in the record showing that it executed or guaranteed the written contract or that it authorized anyone to execute or guarantee any written contract on its behalf. The record shows that the contract was signed in the following manner: "Ferris Realty, Inc. By: /s/ J. J. Ferris, President." This type of execution is presumed to be made on behalf of the corporation. *National State Bank of Terre Haute* v. *Vigo Co. National Bank et al.* (1895), 141 Ind. 352, 40 N. E. 799. As previously stated, the appellant made no sworn denial of the execution of the written contract nor of the apparent authority of J. J. Ferris, as President, to bind the appellant. Appellant had to file sworn denials in response to appellee's complaint in order to place in issue the execution of the contract and the authority of J. J. Ferris to bind the appellant. *Conant* v. *First Nat. Bank, etc.* (1917), 186 Ind. 569, 117 N. E. 607; *Harris* v. *Randolph County Bank* (1901), 157 Ind.

120, 60 N. E. 1025. Appellee submits that the points raised in appellant's contention were not in issue.

Appellant's fourth contention is based on a notation on the above referred to Exhibit #2 which says, "This account assigned to Peoples State Bank." It is to be noted that there is nothing to indicate that it was assigned to the bank without recourse on appellee. It is a matter of common knowledge that many articles sold on contract such as involved in this case are assigned by the seller to a bank or finance company to obtain cash to carry on its business. Almost invariably the seller guarantees the payment on the contract to the bank or finance company. Under such circumstances the seller is the real party in interest and the proper party to bring this action.

Agreeing that appellant is correct in stating that it did not know of the assignment until the exhibit was introduced in evidence and could not therefore have pleaded this matter specially before the trial. However, the record does not show that it asked the trial court for permission to file an amended answer or for a continuance to bring the bank into the case to show what, if any, interest it had in this transaction. Therefore, the record herein does not show that appellant sustained the burden of proof on it to show appellee was not the real party in interest.

Finally, appellant attempts to question the amount of the judgment. Such question cannot be raised under the specifications of the motion for a new trial upon which it relies. Such question must be raised by the fifth provision under causes for a new trial, §2-2401, Burns' 1946 Replacement, which reads as follows: "Error in the assessment of the amount of recovery, whether too large or too small, where the

action is upon a contract or for the injury or detention of property."

In our opinion the record herein indicates that the trial court reached a right and just conclusion and appellant has failed to show substantial grounds for reversal.

Judgment affirmed.

Kelley, P. J., Bierly, J., and Gonas, J., concur.

NOTE.—Reported in 182 N. E. 2d 456. Transfer denied with dissenting opinion reported in 196 N. E. 2d 893.