RAYMOND E. KELLY *v.* BANK OF REYNOLDS.

[No. 2-1274A295. Filed December 16, 1976.]

516

*Clifford M. DeWitt*, of Indianapolis, for appellant.

*John C. McLaughlin, Dellinger, Dellinger & McLaughlin*, of Monticello, for appellee.

SULLIVAN, J.—Three issues are presented for resolution in this appeal:

1. Whether a default judgment may be challenged by a motion to correct errors;
2. Whether Kelly's motion to correct errors was sufficiently specific to preserve the error argued;
3. Whether the withdrawal of the appearance of an attorney withdraws all of the pleadings which have been filed on behalf of the client.

Appellee Bank of Reynolds (Bank) filed suit against Appellant Raymond E. Kelly (Kelly), and Dale W. Kelly[1] alleging money owed upon a promissory note. Although the summons to Kelly was returned unserved he entered an appearance by counsel after learning of the suit through a third party. The attorney filed an answer and counter-claim upon Kelly's behalf. Bank responded to the counter-claim. Kelly's attorney subsequently moved for leave to withdraw from the case, stating that a third party had interfered with his relationship with Kelly, thus making it impossible for him to effectively represent his client. On that day, May 20, 1974 the trial court granted counsel leave to withdraw, and Bank on the same day sent notice to Kelly that it had requested a default judgment, stating as basis therefor that Kelly's attorney had "withdrawn

---

1. The record does not reflect a judgment against Dale W. Kelly.

his appearance and no other party [had] entered an appearance on [his] behalf."[2] The actual withdrawal by Kelly's counsel was filed four days thereafter. Bank subsequently on June 18, 1974 filed its motion for default judgment. The court on that day entered the default and judgment thereon against Kelly.

Following judgment, Kelly retained a new attorney who timely filed a motion to correct errors alleging, pursuant to TR. 59(A)(2), that "there was accident and surprise which ordinary prudence could not have guarded against in that there was a withdrawal by defense counsel which the Trial Court ruled to constitute the same thing as if the defense attorney never had appeared even though there was an answer of denial and counterclaim by the defense outstanding in the record in this cause." It was also asserted that the judgment was subject to correction pursuant to TR. 59(A)(7). The trial court overruled that motion as follows:

"The record shows that on May 20, 1974 plaintiff filed Motion for Default Judgment and notice was duly given. May 24, 1974 counsel for defendant withdrew his appearance. June 18, 1974 plaintiff in open court proceeded to take Default Judgment.

"It so appearing from the record that there was no undue surprise and the defendant had ample opportunity, it would further seem that a Motion to Correct Error is not the best remedy to attack this question."

Kelly then filed a motion pursuant to TR. 60(B)(1), again alleging surprise in that an answer had been filed, and that the cause had been disposed of without trial. In ruling on this motion, the trial court specifically stated that the withdrawal of the appearance of the attorney withdrew all pleadings filed by that attorney, thus leaving the case as if no appearance had ever been filed. The court found that Kelly had not shown sufficient reason for setting aside the default and overruled the motion. Kelly appealed from the over-

2. The notice was sent to the same address as contained on the summons which had been returned as follows: "Is not a good address, and we cannot find him."

ruling of his initial motion to correct errors, but did not file a second motion to correct errors addressed to the overruling of his TR. 60 (B) motion.

## I.

## IT WAS PROPER FOR KELLY TO CHALLENGE THE DEFAULT JUDGMENT VIA A TR. 59 MOTION TO CORRECT ERRORS

Indiana Rules of Procedure TR. 55 (C) reads:

"A judgment by default which has been entered may be set aside by the court for the grounds and in accordance with the provisions of Rule 60 (B)."

This provision has been interpreted by the First District of this Court to be exclusive, i.e., the *only* way to set aside a default judgment is via a TR. 60 (B) motion. *Yerkes* v. *Washington Manufacturing Co., Inc.* (1975), 163 Ind. App. 692, 326 N.E.2d 629. We disagree with the inflexibility of this interpretation, and hold that under the facts before us, Kelly's TR. 59 motion to correct errors was a proper method to challenge the trial court's judgment.

Indiana courts have long had both statutory and inherent equitable powers to set aside or modify erroneous or inequitable judgments. *Clouser* v. *Mock* (1959), 239 Ind. 143, 155 N.E.2d 745; *Indianapolis Life Ins. Co.* v. *Lundquist* (1944), 222 Ind. 359, 53 N.E.2d 338; *Wadkins* v. *Thornton* (1972), 151 Ind. App. 380, 279 N.E.2d 849; *King* v. *King* (1948), 119 Ind. App. 46, 82 N.E.2d 527. Before the current rules of trial procedure became effective on January 1, 1970, a litigant who felt aggrieved was faced with a bewildering array of writs, rules, and statutes for attacking judgments. One commentator noted:

"[The remedies] are scattered throughout the statute books and the common law with no thread of centralization or continuity. The present statutory remedies have sprung from different sources and have evolved independently; consequently, many areas overlap and others are not adequately provided for." *Procedural Techniques for Belated*

*Attacks on Judgments in Indiana,* 32 Ind. L.J. 205, 237 (1957).

TR. 59 and TR. 60 replaced the old remedies, providing two seemingly simple routes for presenting and correcting errors and inequities, thus purportedly eliminating many of the procedural pitfalls which barred the unwary from appellate review. Unfortunately, however, these two rules did not entirely free themselves from the ambiguities of their antecedents. Some of the conflicts and overlaps of the old remedies were carried over. Kelly was here compelled to venture into one of these treacherous gray areas.

Although the language of Indiana TR. 60 (B) in most respects closely copies federal Rule 60 (B) (the notable exception being TR. 60 (B) (2)),[3] the rule has strong roots in Indiana statutory and common law. The Civil Code Study Commission introduced its discussion of TR. 60 (B) by saying, "[t]his rule adopts the Indiana statutory remedies for attacking or challenging judgments, and preserves the equitable remedies for doing so as well. Most of the Indiana case law will remain useful in determining as a substantive matter when relief may be granted. The time and manner of seeking relief may be changed." 4 Harvey & Townsend, *Indiana Practice,* pp. 196-197.

Under most circumstances, defaulted parties invoke the equity powers of the trial court to have a default judgment set aside, because most defaults are entered not because of an error of law by the trial court but because the party failed to appear, or, having appeared, failed to plead. The defaulted party seeking relief in such instance presents facts to the trial court explaining the failure to appear or plead and in essence asks the court to forgive the failure. TR. 60 is particularly well-suited in such instances because it allows

---

3. This provision affords relief for: ". . . any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59; . . ."

for an evidentiary hearing, summoning new witnesses, and pursuing discovery if the circumstances warrant. TR. 60 (D).

The assumption that a proceeding to set aside a default judgment involves only factual questions was articulated in *State ex rel. Beckham, Sr.* v. *Vanderburgh Cir. Ct.* (1954), 233 Ind. 368, 119 N.E.2d 713, a case decided under the old procedure. There, the defaulted party was seeking to have the judgment set aside pursuant to then existing Burns Ind. Stat. § 2-1068, which provided that:

> "The court shall relieve a party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect. On complaint filed and notice issued, as in original actions within two [2] years from and after the date of the judgment, . . . ."

(These statutory grounds for relief were carried into the new rules as TR. 60 (B) (1)).

In discussing the difference between the procedure under § 2-1068 and a motion for a new trial,[4] our Supreme Court said:

> "While such a procedure may have some of the characteristics of a motion for a new trial, it differs materially therefrom in that a motion for a new trial raises only a question of law, while a proceeding to set aside a default judgment raises only a question of fact. In a motion for a new trial the court is required to determine questions of law arising out of the trial of the original issues, while in an action to set aside a default judgment it is required to determine facts which are not a part of the original issue but which form the basis for a new and separate action. . . . It is not in any way a trial of the original issues, but a determination of the facts surrounding the action of the court in rendering judgment against the defendant because of some mistake, inadvertence, surprise, or excusable neglect on his part." 233 Ind. at 371, 119 N.E.2d at 714-15.

That is not to say, however, that courts blindly assume that

---

4. TR. 59 replaced the motion for a new trial, making extensive changes in the relief which a trial court may grant. With the exceptions of TR. 59 (A) (7) and (9), however, the grounds for granting relief are virtually identical to those in the motion for new trial. *See*, Ind. Ann. Stat. § 2-2401 (Burns 1968).

all appeals from judgments entered by default involve purely factual matters. It was long ago recognized that an appeal could be taken from a default judgment without first moving to set aside the default judgment if the challenge were for error apparent of record, e.g. a challenge to the jurisdiction of the court or the sufficiency of the complaint to state a cause of action. *Lee* v. *Mozingo* (1895), 143 Ind. 667, 41 N.E. 454; *Searle* v. *Whipperman* (1881), 79 Ind. 424; *Monroe* v. *Strader* (1870), 33 Ind. 111; *Cochnower* v. *Cochnower* (1866), 27 Ind. 253.

Here, Kelly, suffered a default judgment not because he failed to appear or plead, but because the trial court ruled as a matter of law that the appearance and pleading filed on his behalf did not exist. We are not presented with a question concerning facts outside the record which entitle Kelly to equitable relief. Rather, we must resolve the pure question of law which underlies the entry of the default judgment, namely, whether withdrawal of the appearance of an attorney automatically withdraws all of the pleadings he filed, leaving the case as if there never had been an appearance.

Because of the distinction between the default entered in this case and the normal, factual underpinnings for entry of a default, we hold that Kelly's TR. 59 motion to correct errors was appropriately addressed to that entry.[5] Although TR. 59 and TR. 60 were probably intended to address different problems, the rules as they exist present overlaps and duplications. If they were to serve but one purpose, one rule would suffice. Indeed, the catchall provisions of TR. 59(A)(9) and TR. 60(B)(8)[6] could arguably encompass all of the grounds in

---

5. Because Kelly was not invoking the equity power of the trial court, there was no need that he allege a meritorious defense in seeking to set aside the default judgment. Contrast *Moe* v. *Koe* (1975), 165 Ind. App. 98, 330 N.E.2d 761, 764; *Cantwell* v. *Cantwell* (1957), 237 Ind. 168, 143 N.E.2d 275, cert. den. 356 U.S. 225.

6. TR. 59(A)(9) allows a trial court to correct an error "[f]or any reason allowed by these rules, statute or other law." TR. 60(B)(8) allows relief for "any other reason justifying relief from the operation of the judgment."

both Rules. It is not possible to resolve the problems presented by these conflicts and overlaps in a single judicial opinion, and we need not attempt to do so in this appeal.[7] Our holding in this regard is confined to the statement that when a judgment (default or otherwise) has been entered against a party, and that party alleges that an error of law forms a basis of that judgment, the allegations may be presented via a TR. 59 motion to correct errors. *See, Robbins* v. *Robbins* (1976) 171 Ind. App. 509, 358 N.E.2d 153.

Early interpretations of the present rules indicated that TR. 59 was a broad and flexible tool for seeking relief from an error-infected judgment. Thus in *Bradburn* v. *Cnty. Dept. of Public Welfare* (1971), 148 Ind. App. 387, 390, 266 N.E.2d 805, 806, this Court said:

> "Under TR. 59 (A) the motion to correct errors can present to the trial court almost any conceivable error and can pray for relief suitable to the alleged error. Under the provisions of TR. 59 (E) the trial court is empowered to grant any appropriate relief. . . ."

The First District of this Court, however, has seemingly restricted the scope of TR. 59 by suggesting that a motion to correct errors may not be used to set aside a dismissal with prejudice under TR. 41 or a default under TR. 55. *Hooker* v. *Terre Haute Gas Corp.* (1974), 162 Ind. App. 43, 317 N.E.2d 878; *Yerkes* v. *Washington Manufacturing Co., Inc.* (1975), 163 Ind. App. 692, 326 N.E.2d 629, *supra*. In *Hooker* v. *Terre Haute Gas Corp., supra,* the First District construed TR. 41 (F) to permit reinstatement of a dismissal with prejudice only through a TR. 60 (B) motion. 317 N.E.2d at 880. However, the court also recognized that if a dismissal with prejudice were infected by a defect other than those enumerated in TR. 60 (B), (e.g. denial of a fair trial because

---

7. *See, Robbins* v. *Robbins* (1976), 171 Ind. App. 509, 358 N.E.2d 153. Compare with *Covalt* v. *Covalt* (1976), 171 Ind. App. 37, 354 N.E.2d 766 at 768-769, fn. 3, wherein Judge Buchanan voiced his strong view that if cause for relief from a default judgment is discovered or discoverable within 60 days of judgment, that judgment may be attacked only by a TR. 59 motion.

of irregularity in the proceedings), a TR. 59 motion would be the appropriate vehicle for challenging the judgment. 317 N.E.2d at 881.

No such distinction was explicitly recognized in *Yerkes* v. *Washington Manufacturing Co., Inc., supra,* wherein the appellant sought to have a default judgment set aside by filing a motion to correct errors asserting abuse of discretion and alleging excusable neglect. However, the court did not entirely close the procedural door to an attack upon a default judgment by other than a TR. 60 motion if the grounds for relief were more specifically covered by another rule. In holding that the TR. 59 motion filed by the Appellant would be treated as a TR. 60 motion, the *Yerkes* court said:

> "Since default judgments may be set aside only in accordance with TR. 60(B) *and since the relief sought by plaintiff was upon grounds stated in that rule,* specifications nos. 2 and 3 of plaintiff's motion to correct errors are in substance, and must be treated as, a TR. 60 motion seeking relief from judgment or order of the court." (footnote omitted, emphasis supplied). 326 N.E.2d at 633.

Thus while a majority of this panel disagrees with the broad statement in *Yerkes* that default judgments may be set aside *only* through the provisions of TR. 60(B), we do not believe that our result is necessarily inconsistent with the spirit of *Yerkes*.

## II.

## MOTION TO CORRECT ERRORS WAS SUFFICIENTLY SPECIFIC TO PRESERVE ERROR ARGUED

Bank argues that Kelly's motion to correct errors is fatally deficient because it did not specifically inform the trial court of any grounds under TR. 59 which would justify relief. It is true that Kelly's motion to correct errors is inartfully drawn. However, we recognize the difficulty of his position in selecting the proper ground for asserting error. As noted, the usual grounds for setting aside a default judgment are mistake, surprise, or excusable neglect, because the vast majority

of default judgments are entered because of factual circumstances causing the party to fail to appear or plead. Here, Kelly was in the unusual position of suffering a default entered against him because of an alleged error of law.

While Kelly could have more clearly stated that he believed the trial court had made an error of law, under the peculiar circumstances here it is understandable that he used the traditional language for seeking to have a default judgment set aside. The motion informed the trial court that Kelly believed there was error in the legal conclusion that withdrawal of the attorney withdrew all the pleadings. Subsequent filings in opposition to and in support of the motion to correct errors and the trial court's ruling on the motion indicate that the trial court understood this to be the issue. Furthermore, one of the purposes of our current rules was to relax the rigid formalism of the old procedures. As the Civil Code Study Commission said in its comments to TR. 59.

> "Although error couched merely in statutory language was not usually sufficient, *Scott* v. *Scott,* 6 Ind. Dec. 94, 6 Ind. Dec. 197, 209 N.E.2d 49, 209 N.E.2d 518. (Ind. App. 1965), a long line of indefensible cases have required the assignment of errors be specified under the named statutory ground and have held that a specification under one statutory ground which should be included under another is fatal. E.g., *Kilander* v. *Kilander,* 13 Ind. Dec. 33, 233 N.E.2d 626 (Ind. 1968); *Ferris Realty, Inc.* v. *ABCO Signs, Inc.,* 135 Ind. App. 679, 182 N.E.2d 456 (1962); *Finster* v. *Wray,* 131 Ind. App. 303, 164 N.E.2d 660 (1960). This absurd pitfall, created to obstruct use of the motion and avoid decisions upon the merits of a controversy upon appeal, are intended to be overruled by this subdivision." 4 Harvey & Townsend, *supra,* p. 115.

We decline, therefore, to affirm upon grounds that a Motion to Correct Errors did not preserve the error asserted. *Board of Commissioners of Cnty. of Howard* v. *Kokomo City Plan Cmm'n.,* (1974), Ind. App., 310 N.E.2d 877, 881-2 (Rev'd on other grounds 330 N.E.2d 92); *Economy Oil Corp.* v. *Indiana Dept. of State Revenue* (1974), 162 Ind. App. 658, 321 N.E.2d 215, 216.

Bank also urges us to affirm the judgment or to dismiss this appeal because Kelly did not exercise "due diligence" to avoid the "surprise" alleged in the motion to correct errors, and because an erroneous interpretation of law by the trial court is not an "accident or surprise which ordinary prudence could not have guarded against." We decline to do so. "Surprise" is normally a factual matter. In those circumstances, the party adversely affected is required to show that the exercise of due diligence on his part could not have avoided the surprise. *Kelly* v. *Bunch* (1972), 153 Ind. App. 407, 287 N.E.2d 586; *Jessop* v. *Werner Transportation Co.* (1970), 147 Ind. App. 408, 261 N.E.2d 598. Here, however, the alleged "surprise" is founded upon the legal conclusion drawn by the trial court. A requirement of due diligence in such circumstances would be meaningless. A ruling cannot be discovered until it has been made. Neither should it be required that a party under such circumstances anticipate an erroneous ruling.

We hold, therefore, that Kelly's TR. 59 motion was sufficient to preserve the question whether withdrawal of the appearance of an attorney withdraws all the pleadings he has filed on the client's behalf.

## III.

## WITHDRAWAL OF AN ATTORNEY DOES NOT NECESSARILY WITHDRAW PLEADINGS

Kelly argues that the trial court erred in ruling that the withdrawal of an attorney withdraws all the pleadings filed, leaving the case as if no appearance had been entered. He asserts that only the withdrawal of a *party* withdraws pleadings. Bank, on the other hand, asserts that withdrawal of the *attorney* withdraws the pleadings, pointing to a line of Indiana cases arguably to that effect.

Bank cites case authorities which with one exception are from the 19th century. The better rule, and the one no doubt

intended, although poorly articulated, in these early cases is that only the withdrawal of a *party* either pro se or through his attorney, withdraws the pleadings filed.

To hold that in all instances the withdrawal of an attorney withdraws all of the pleadings he has filed is to create and invite absurd and burdensome results. For example, attorneys on behalf of parties may have engaged in extensive discovery, or filed various motions pending before the court when an attorney withdraws an appearance. It would be illogical to require a second attorney to duplicate the work of the prior attorney.

In any event, the question has been decided by our Supreme Court in *State ex rel. Durham* v. *Marion Circuit Court* (1959), 240 Ind. 132, 136, 162 N.E.2d 505, 507:

> "Such a contention results from a failure to distinguish between the withdrawal of an *attorney's* appearance in the case and the appearance of a *party* to the action. It is true that if a *party* withdraws his appearance with the permission of the court, the court loses jurisdiction of that party, and all pleadings of the party go out also, as stated in *American Steel, etc., Co.* v. *Carbone* (1915), 60 Ind. App. 484, 109 N.E. 220. However, the same result does not follow where an attorney merely withdraws his own appearance as representing a party, while the party still remains in the cause and for whom substitute attorneys appear." (Original emphasis).

Because Kelly has filed an answer and counterclaim which remain of record, he has not "failed to plead or otherwise comply with these rules. . . ." TR. 55(A). We hold, therefore, that the trial court erred in entering judgment against Kelly.

The judgment is reversed and the cause is remanded for reinstatement of Kelly's answer and counterclaim and for further proceedings with reference to the issues joined by the answer and by Bank's answer to the counterclaim.

White, J. and Robertson, C.J. (participating by designation), concur in result.

NOTE.—Reported at 358 N.E.2d 146.