**METAL FORMING TECHNOLOGIES, INC., and Dynamerica Manufacturing Company, Plaintiffs,**

v.

**MARSH & MCLENNAN COMPANY, Defendant.**

No. 1:03–CV–0855–TAB–JDT.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 15, 2004.

Jack B. Cobetto, Reed Smith LLP, Pittsburgh, PA, John K. McDavid, Locke Reynolds LLP, Wade Dunlap Fulford, Indianapolis, IN, for defendant.

Scott L. Starr, Jon M. Myers, Starr Austin Tribbett Myers & Miller, Logansport, IN, for plaintiffs.

### ENTRY ON SUMMARY JUDGMENT

BAKER, United States Magistrate Judge.

## I. Introduction.

This matter is before the Court on a motion for summary judgment filed by Defendant Marsh & McLennan Company ("Marsh").[1] Marsh argues that it is entitled to summary judgment on purely procedural grounds because Plaintiffs Metal Forming Technologies, Inc. (Metal Forming") and Dynamerica Manufacturing Company ("Dynamerica") (collectively "Plaintiffs") are not the real parties in interest. As a result of a prior lawsuit against Plaintiffs brought by Cincinnati Insurance Company ("Cincinnati"), Plaintiffs fully assigned the claims that are the subject of this lawsuit to Cincinnati. In response to Marsh's motion, Plaintiffs contend that under "long standing" Indiana law, either assignee or assignor can sue as the real party in interest. Moreover, Plaintiffs argue that in the event they are incorrect in this regard, Federal Rule of Civil Procedure 17(a) provides for the substitution of Cincinnati.

As explained below, Plaintiffs are not the real parties in interest. And Plaintiffs appear to have ignored—not followed—longstanding Indiana law. Further, as the facts make clear, Plaintiffs are not really Plaintiffs at all. Instead, Cincinnati filed this action in disguise, using Plaintiffs' names while knowing that Plaintiffs no longer owned the claims that were brought. While perhaps a strategic decision, the strategy backfired. Because it was neither difficult to determine the proper party to sue, nor an honest mistake by

---

1. In its answer to Plaintiffs' complaint, Marsh indicates that "there is no such entity as 'Marsh & McLennan Company.'" [Docket No. 8, p. 1]. However, Marsh admits that it is the intended Defendant in this matter, noting that its correct name is Marsh USA Inc. [*Id.*]. Although the caption was never changed, there is no dispute that Marsh USA Inc. is the intended Defendant in this matter and that it received proper service.

Plaintiffs (or Cincinnati for that matter), substitution under Rule 17(a) is unavailable. Moreover, Plaintiffs (and Cincinnati) have been on notice of Marsh's real party in interest defense at least since Marsh's answer, filed on July 23, 2003.[2] Yet, to date, Plaintiffs (or Cincinnati) have not taken affirmative steps to remedy this problem. More than a reasonable amount of time has passed since Marsh first raised the issue in its answer. Accordingly, dismissal under Rule 17(a) is appropriate. Marsh's motion for summary judgment is GRANTED.

## II. Background.[3]

On June 30, 1992, Dynamerica (formerly known as Pooler Industries, Inc.) entered into a lease agreement ("the lease") with the Downtown Industrial Center ("DIC") for several buildings in a large, multi-tenant industrial complex in Muncie, Indiana. [Stipulated Facts, Ex. A to Ex. 1; Riesmeyer Aff., ¶ 2]. The original lease term ended on June 30, 1997. However, on December 28, 1996, Dynamerica exercised an option for an additional five years—from July 1, 1997 through June 30, 2002. [Stipulated Facts, Exs. A, B to Ex. 1]. Thereafter in 1999, Metal Forming acquired Dynamerica. [Riesmeyer Aff., ¶ 2].

On March 21, 2000, a fire damaged the premises Plaintiffs leased. [Riesmeyer Aff., ¶ 1; Compl., ¶¶ 3, 12]. Cincinnati, DIC's insurer, paid property damages to DIC pursuant to Cincinnati's policy insuring DIC against the risk of loss to the complex and DIC's business. [Compl., ¶ 12]. On September 19, 2001, Cincinnati brought a subrogation action against Plaintiffs in the Delaware County Circuit Court to recover its expenses that it paid to DIC as a result of the March 21, 2000 fire. [Compl., ¶ 12, Stipulated Facts, Ex. 1]. In its complaint, Cincinnati alleged that it had paid "property damages and incurred expenses exceeding $1,051,000." [Stipulated Facts, Ex. 1, ¶ 11]. Cincinnati sought to recover this amount, with prejudgment interest, plus its attorneys fees. [Stipulated Facts, Ex. 1, ¶¶ 17, 22, 27, 35, 36].

Prior to the fire, Plaintiffs had purchased two separate liability insurance policies; a $1,000,000 liability insurance policy from Traveler's Insurance Company ("Traveler's"), and a 50,000,000 umbrella liability policy from Illinois National, AIG Insurance Company ("AIG"). [Compl., ¶ 5; Answer ¶ 5; Riesmeyer Aff., ¶ 3]. Both of these policies were purchased through Marsh. [Compl., ¶ 6; Answer ¶ 6; Riesmeyer Aff., ¶ 3]. However on November 19, 2002, AIG informed Plaintiffs that it would not provide coverage for Cincinnati's claims. [Riesmeyer Aff., ¶ 4; Pls.' Ex. 2]. In addition, after AIG's denial of coverage, Marsh informed Plaintiffs that Traveler's coverage was limited to $100,000. [Riesmeyer Aff., ¶ 5].

On March 28, 2003, the Plaintiffs and Cincinnati reached a settlement agreement regarding Cincinnati's subrogation claims. [Stipulated Facts, Ex. 3]. As part of the settlement, Plaintiffs agreed to have a judgment entered against them and in favor of Cincinnati in the amount of $1,500,000. [Stipulated Facts, Ex. 3, p. 6]. Of this amount, the Plaintiffs and Cincinnati allocated $446,716.40 to prejudgment interest and attorneys' fees. [Stipulated Facts, Ex. 3, pp. 1, 2, 6]. Traveler's paid $100,000 to Cincinnati—leaving $1.4 million of the judgment outstanding. [Stipulated Facts, Ex. 3, pp. 3–6].

In addition, in exchange for Plaintiffs' agreement to have judgment entered against them, Cincinnati agreed not to take any steps or pursue any action to collect or execute on that judgment. [Stipulated Facts, Ex. 3, p. 6]. Additionally, Plaintiffs assigned to Cincinnati all of their claims against Marsh relating to the allegation that Marsh negligently failed to procure appropriate insurance coverage for Plaintiffs. [Stipulated Facts, Ex. 3, pp. 6–7, 9]. As part of the agreement, Plaintiffs agreed to "permit" Cincinnati to sue in Plaintiffs' names and to assist Cincinnati and Cincinnati's counsel in the prosecution of the

---

**2.** Marsh's thirteenth affirmative defense stated that "[t]he action is not being pursued by the real party or parties in interest." [Docket No. 8, p. 7].

**3.** The parties agree that Rule 56 provides the appropriate standard of review. Accordingly, the facts are either undisputed or viewed in a light most favorable to Plaintiffs, the non-moving parties.

assigned claims against Marsh.[4] [Stipulated Facts, Ex. 3, pp. 7–8].

Plaintiffs originally commenced this action on May 8, 2003 in Delaware County Court alleging breach of fiduciary duty, negligence and breach of contract arising from Marsh's alleged failure to procure adequate insurance coverage for Plaintiffs. [Stipulated Facts, Ex. 4]. Marsh removed this action to this Court on June 9, 2003. [Docket No. 1].

## III. Discussion.

### A. Real Party In Interest.

■ Federal Rule of Civil Procedure 17(a) requires that "[e]very action shall be prosecuted in the name of the real party in interest." The parties disagree on whether the Plaintiffs are the real parties in interest in this action. However, all agree that in this diversity action, the determination of the real party in interest is made based on Indiana law. *Shapo v. Underwriters Mgmt. Corp.*, 2002 WL 31155059, at *6 (N.D.Ill.2002), *citing American Nat'l Bank v. Weyerhaeuser Co.*, 692 F.2d 455, 459–60 (7th Cir.1982).

■ It is undisputed that pursuant to the March 28, 2003 settlement agreement between Plaintiffs and Cincinnati, Plaintiffs assigned to Cincinnati their claims against Marsh relating to the allegation that Marsh negligently failed to procure appropriate insurance coverage for Plaintiffs. In relevant part, the settlement agreement stated:

> Contemporaneously with and in consideration of the grant of the Covenant Not to Execute, [Plaintiffs] hereby sell, assign and transfer to [Cincinnati] all rights, title and interest in any and all causes of action [Plaintiffs] have or may have now or in the future against Marsh for coverage for the claims raised in the Lawsuit, or for any damages sustained by reason of the failure of Marsh to procure adequate insurance

coverage to cover the losses described by [Cincinnati] in the Lawsuit.

[Stipulated Facts, Ex. 3, pp. 6–7]. Thus, as of March 28, 2003, Plaintiffs had completely and fully assigned all claims against Marsh that are the subject matter of the instant lawsuit. Accordingly, Marsh argues that at the time Plaintiffs brought the current action on May 8, 2003, they were no longer the real parties in interest and could not maintain a suit in their name. The Court agrees.

In *E & L Rental Equip., Inc. v. Gifford*, 744 N.E.2d 1007, 1011 (Ind.Ct.App.2001), the Indiana Court of Appeals explained:

> Thus, the issue becomes whether as a result of this assignment, Gifford was not the real party in interest to bring this action in the trial court. "A real party in interest . . . is the person who is the true owner of the right sought to be enforced. He or she is the person who is entitled to the fruits of the action." *Hammes v. Brumley*, 659 N.E.2d 1021, 1030 (Ind.1995). After a cause of action is fully assigned, the assignor is no longer a proper party to sue and has no right of action. *See Burlison v. Carl*, 83 Ind.App. 514, 149 N.E. 89, 90 (1925) and *Barger v. Hoover*, 120 Ind. 193, 21 N.E. 888, 890 (1889).

*See also Fairfield Dev., Inc. v. Georgetown Woods Sr. Apartments Ltd. P'ship*, 768 N.E.2d 463, 475 (Ind.Ct.App.2002) (finding that claims that had been previously assigned barred the assignor from pursuing those claims in subsequent suit).[5] Accordingly, under Indiana law, Plaintiffs are not the real parties in interest because of the total assignment of their claims against Marsh to Cincinnati. In other words, Plaintiffs do not own the claims brought in the pending action.

Arguing otherwise, Plaintiffs assert that they are "the proper party [sic] because they are the injured party [sic] as demonstrated by the outstanding judgment rendered against [Plaintiffs]." [Docket No. 42, p. 5].

---

4. As noted by Marsh, "counsel for Plaintiffs in this action represented Cincinnati in the first lawsuit by Cincinnati against Plaintiffs." [Docket No. 48, p. 6].

5. Plaintiffs attempt to distinguish the case law relied upon by Marsh because those cases involved assignments covered by statute. This is a

distinction without a difference. It matters not how claims are assigned—whether through operation of law or contract. What matters is the assignment itself. Here, Plaintiffs fully assigned their claims. Thus, they are not the real parties in interest.

This, however, confuses constitutional standing with prudential standing. As explained in *Guynn v. Potter*, 2002 WL 243626, at \*4 (S.D.Ind.2002):

> The distinction between standing to sue and the real party in interest doctrine is often blurred. The two concepts are similar in that both "are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits." *Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir.1993). The doctrine of standing requires federal courts to make sure concrete legal issues are presented by a plaintiff with a particularized injury in fact traceable to the conduct of the defendant which is likely to be redressed by the relief sought. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). However, the designation of the real party in interest entails identifying the person who possesses the particular right sought to be enforced. *Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir.1992).

*See also Tate v. Snap–On Tools Corp.*, 1997 WL 106275, at \*4 (N.D.Ill.1997). "Put another way, there is a difference between constitutional standing and prudential standing." *Williams v. United Technologies Carrier Corp.*, 310 F.Supp.2d 1002, 1009–10 (S.D.Ind. 2004), *citing Dunmore v. U.S.*, 358 F.3d 1107, 1112 (9th Cir.2004) ("Beyond this 'irreducible constitutional minimum of standing,' we additionally require as a prudential matter that [the plaintiff] assert his own legal interests as the real party in interest.") (citations omitted); *Gorski v. Troy*, 929 F.2d 1183, 1186–87 (7th Cir.1991) (explaining constitutional and prudential limitations on standing). In short, while Plaintiffs are correct that Cincinnati "is not the party injured by Marsh's [alleged] misdeeds," [Docket No. 42, p. 5], Cincinnati is the owner of the right that is sought to be enforced. Thus, Plaintiffs' argument is unavailing.[6]

**B. Substitution under Fed.R.Civ.P. 17(a).**

Having determined that Cincinnati—and not the Plaintiffs—is the real party in interest, the Court must next determine whether substitution of Cincinnati is appropriate under the circumstances of this case. In relevant part, Federal Rule of Civil Procedure 17(a) states:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Despite this allowance for substitution, Marsh argues that "[c]ourts have held that where the determination of the right party to bring the action was not difficult and where no excusable mistake was made, the last sentence of Rule 17(a) is not applicable and the action should be dismissed." [Docket No. 31, p. 8]. In contrast, Plaintiffs argue that "[c]ourts have consistently held the dismissal of an action is an inappropriate remedy where substitution of the real party in interest would not cause substantial prejudice to the defendant." [Docket No. 42, p. 7]. For the reasons that follow, the Court finds the last sentence of Rule 17(a) to be inapplicable to the instant matter. Accordingly, the substitution of Cincinnati for Plaintiffs is inappropriate.

The Advisory Committee's notes with respect to the last sentence of Rule 17(a) state:

> Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed .... The provision

---

6. Plaintiffs cite *Reid v. Ross*, 15 Ind. 265 (Ind. 1860), *Singleton v. O'Blenis*, 125 Ind. 151, 25 N.E. 154, 155 (1890), and *Ferris Realty, Inc. v. Abco Signs, Inc.*, 135 Ind.App. 679, 182 N.E.2d 456 (1962) in support of their argument that "long standing Indiana law ... holds that the assignor is a proper party in interest." [Docket No. 42, pp. 5–6]. The Court carefully reviewed

these decisions and finds that they are inapplicable where, as here, there has been a full and complete assignment of claims. Moreover, more recent case law undermines Plaintiffs' position. *See E & L Rental Equip., Inc.*, 744 N.E.2d at 1011 ("After a cause of action is fully assigned, the assignor is no longer a proper party to sue and has no right of action.").

should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.

Fed.R.Civ.P. 17(a). Relying on this language, courts that have addressed this issue have held this provision to be applicable only when the improper party brought suit as a result of an honest mistake or because the determination of the proper party was difficult. *See Wieburg v. GTE Southwest, Inc.,* 272 F.3d 302, 308 (5th Cir.2001) ("In accordance with the Advisory Committee's note, most courts have interpreted the last sentence of Rule 17(a) as being applicable only when the plaintiff brought the action in her own name as the result of an understandable mistake, because the determination of the correct party … is difficult."); *Intown Properties Mgmt. Inc. v. Wheaton Van Lines, Inc.,* 271 F.3d 164, 171 (4th Cir.2001) (finding that Rule 17(a) was inapplicable because the "mistake had not been 'understandable'"); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 20 (2nd Cir.1997) ("the district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party."); *Lans v. Gateway 2000, Inc.,* 84 F.Supp.2d 112, 120 (D.D.C.1999) ("it is appropriate to liberally grant leave to substitute a real party in interest when there has been an honest mistake in choosing the nominal plaintiff, meaning that determination of the proper party was somehow difficult at the time of the filing of the suit, or that the mistake is otherwise understandable."), *aff'd,* 252 F.3d 1320 (Fed.Cir.2001); *Feist v. Consolidated Freightways Corp.,* 100 F.Supp.2d 273, 276 (E.D.Pa.1999) ("Rule 17(a) should not be applied blindly to permit substitution of the real party in interest in every case. In order to substitute the trustee as the real party in interest, Plaintiff must first establish that when he brought this action in his own name, he did so as the result of an honest and understandable mistake."). The Court agrees that an "honest mistake" test applies to the situation at hand. However, Plaintiffs failed to satisfy even this liberal standard.

Plaintiffs rely heavily on *Advanced Magnetics,* 106 F.3d at 20–21, and *Link Aviation, Inc. v. Downs,* 325 F.2d 613, 614–15 (D.C.Cir. 1963), for the proposition that substitution should occur in this case. Indeed, *Advanced Magnetics* held that "[a] Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." *Advanced Magnetics, Inc.,* 106 F.3d at 20. *See also Link Aviation,* 325 F.2d at 614–15 (allowing substitution of fully subrogated insurer in suit brought by insureds). However, these cases are distinguishable from the case at hand.

The court in *Advanced Magnetics* specifically found that:

> There plainly was a mistake as to the legal effectiveness of the documents to permit AMI to sue as assignee. However, the [district] court did not refer to any evidence suggesting that the mistake itself was deliberate or tactical, and we have been pointed to no evidence that would indicate that the attempted assignments were undertaken in bad faith or in an effort to deceive or prejudice the defendants.

*Advanced Magnetics,* 106 F.3d at 20–21. In other words, the Second Circuit specifically applied the "honest mistake" test and found that one had indeed occurred. Accordingly, the court held that the district court erred in denying the leave to amend the complaint.

■ In the case at hand, Plaintiffs' decision to sue in their own names was not the result of an honest or understandable mistake—the settlement agreement between Plaintiffs and Cincinnati unambiguously assigned the claims that are the subject of this lawsuit to Cincinnati. In fact, Plaintiffs assert that it was not a mistake at all, arguing in their brief that they are the proper parties to this action because of "long standing" case law. However, assuming for sake of argument that Cincinnati is the real party in interest, Plaintiffs offer the following reasons for their gaffe:

> Because of the judgment against it and its duty to assist in the vigorous prosecution of its claims against Marsh, [Plaintiffs] had

a good faith basis to be named as plaintiff[s] in this litigation. [Plaintiffs] relied on long standing Indiana law that states the assignor can be named as the party of interest in an assignment of claims. Additionally the settlement agreement itself permits [Plaintiffs] to be the named plaintiff. Furthermore, dismissal of this action is not warranted given that there is no prejudice to the defendant, if a substitution occurs.

[Docket No. 42, p. 9]. Plaintiffs' reasons, in the Court's view, do not disclose an honest or understandable mistake. Quite the contrary. As Marsh points out in reply, "[i]f Plaintiffs did in fact undertake legal research on this issue prior to filing this action, Plaintiffs must have failed to notice, ignored or rejected the recent cases directly on point stating that the assignee, not the assignor, must be the plaintiffs." [Docket No. 48, p. 7]. Cincinnati chose to sue in Plaintiffs' names knowing that Cincinnati—not the Plaintiffs—owned the claims. Such sleight of hand should not be rewarded. *See Lans,* 84 F.Supp.2d at 120 (" 'justice would not be served if the plaintiffs were rewarded for their failures, oversights and misrepresentations by permitting an amendment of their pleadings ....' "), *quoting Automated Info. Processing, Inc. v. Genesys Solutions Group, Inc.,* 164 F.R.D. 1, 3 (E.D.N.Y.1995).

Furthermore, Plaintiffs' reliance on the settlement agreement's provision permitting Cincinnati to sue in Plaintiffs' names is unpersuasive and does not support an honest mistake. Instead, the Court finds that Cincinnati's decision to sue in Plaintiffs' names was a strategic and tactical decision in contravention of Rule 17(a). *See Esposito v. U.S.,* 368 F.3d 1271, 1276 (10th Cir.2004) ("our cases focus primarily on whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was 'honest'), and on whether the defendant was prejudiced thereby"). Indeed, the Court agrees with Marsh's suggestion that Cincinnati's decision to sue in Plaintiffs' names was made to make

the Plaintiffs more sympathetic to a jury. [Docket No. 48, p. 7 n. 1]. In other words, Cincinnati attempts to make this suit about a company ravaged by fire and not about an insurance company that paid for the fire's damage. Rule 17(a) is inapplicable to these circumstances.

*Link Aviation* is likewise distinguishable. In that case, the appellate court reversed the district court's denial of a motion to substitute the insurers for the originally named plaintiffs. The court explained that "the suit must be construed as having been brought by the insureds for the use of the insurers who had then become subrogated to the rights of the nominal plaintiffs." *Link Aviation,* 325 F.2d at 614. The court further noted that the "[p]laintiffs ... were not suing for double recovery but to recover for the insurers what the latter had paid." *Id.* It is this principle that Rule 17(a) encompasses. *See* Fed.R.Civ.P. 17, Advisory Committee Notes ("It is ... intended to insure against forfeiture and injustice—in short, to codify in broad terms the salutary principle of ... *Link Aviation, Inc. v. Downs,* 325 F.2d 613 (D.C.Cir.1963)."). However, as explained above, as a prerequisite to substitution Rule 17(a) also requires an honest or understandable mistake or difficulty in naming the proper party. Neither was present here, and substitution is inappropriate.[7]

In addition, as noted above, Rule 17(a) allows for a reasonable time "after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest." Fed.R.Civ.P. 17(a). On July 23, 2003, Marsh filed its answer to Plaintiffs' complaint. Marsh's thirteenth affirmative defense stated that "[t]he action is not being pursued by the real party or parties in interest." [Docket No. 8, p. 7]. Despite this defense, Plaintiffs failed to take advantage of Rule 17(a)'s savings clause by seeking the ratification, joinder or substitution of Cincinnati. In fact, to date, other than arguing in their brief that substitution

---

**7.** The Court also notes that at least one court has distinguished the subrogor/subrogee relationship present in *Link Aviation* from that of an assignor/assignee relationship. *See Lans v. Gateway 2000, Inc.,* 84 F.Supp.2d 112, 119 ("the Court holds that both the assignor/assignee and the sole shareholder/corporation relationships present in this case are not parallel to the insured/insurer relationship in *Link Aviation*.").

would be appropriate if the Court finds that Plaintiffs are not the real parties in interest, Plaintiffs have taken no affirmative steps (i.e. filing a motion for joinder or substitution) in the 14 months since Marsh's answer or the nearly four months since Marsh filed its summary judgment motion. This is an unreasonable amount of time, and dismissal is appropriate. *See Weissman v. Weener,* 12 F.3d 84, 87 (7th Cir.1993) (affirming dismissal after plaintiff failed to remedy real party in interest defect within reasonable time); *Wieburg v. GTE Southwest, Inc.,* 2003 WL 21417074, at *2 (5th Cir.2003) ("Seven months is more than reasonable, especially after [plaintiff] fully demonstrated her intent not to surrender control of this suit.") (unpublished); *Guynn v. Potter,* 2002 WL 243626, at *6 (S.D.Ind.2002) (dismissal appropriate after plaintiff failed to join or substitute trustee within reasonable time).

Finally, Plaintiffs argue that "[w]ithout a clear showing of prejudice to the defendant, dismissal is not an appropriate remedy." [Docket No. 42, p. 10]. The Court disagrees. It is true that:

> Various factors inform a decision to permit amendment and joinder under rule[ ] ... 17(a). Such factors include (1) whether an honest mistake had been made in selecting the proper party; (2) whether joinder of the real party in interest had been requested within a reasonable time after the mistake was discovered; (3) whether joinder is necessary to avoid an injustice; and (4) whether joinder would prejudice the nonmoving party.

*Conneely v. Butterworth Jetting Systems, Inc.,* 219 F.R.D. 25, 27 (D.Mass.2003), *citing* 6A C.A. Wright, A.R. Miller & M.K. Kane, Federal Practice and Procedure § 1555 (2d ed. 1990 & Supp.2000). However, where, as here, the Court determines that no honest mistake was made and Plaintiffs failed to substitute the real party in interest within a reasonable time after being notified of this potential roadblock, the issue of prejudice is not dispositive. *See Intown Properties Mgmt. Inc. v. Wheaton Van Lines, Inc.,* 271 F.3d 164, 170 (4th Cir.2001) ("Rule 17 is 'intended to insure against forfeiture and injustice' *in cases where* 'an honest mistake has been made in choosing the party in whose name the action is to be filed.'") (emphasis added).

## IV. Conclusion.

Marsh's motion for summary judgment is GRANTED. As this ruling does not constitute a decision on the merits, this action shall be dismissed without prejudice. All other motions are DENIED as moot.